**HEARD v. PEARMAN, District Judge, et al.**
**(No. 11447.)**

(Court of Civil Appeals of Texas. Fort Worth. May 23, 1925. Rehearing Denied June 27, 1925.)

1. **Mandamus ⬤⟞154(4)—Petition must show every fact necessary to entitle applicant to relief.**

In order for an applicant to be entitled to a writ of mandamus, it is necessary that the petition therefor should show every fact necessary to entitle him to the relief sought.

2. **Appeal and error ⬤⟞389(3)—Affidavit of inability to pay costs held insufficient.**

Action of the trial court in refusing relator's affidavit of inability to give a cost bond, or to pay costs of appeal, or any part thereof, as provided by Rev. St. arts. 2097, 2098, *held,* in view of evidence submitted, not in abuse of trial court's discretionary powers.

3. **Appeal and error ⬤⟞1—Regulations governing right of appeal must be substantially observed.**

The right of appeal is not an inherent one, but is a privilege merely, given by law, and can be exercised only when the regulations limiting the right have been substantially observed.

Petition for writ of mandamus by John L. Heard against Hon. C. R. Pearman, Judge of the Sixteenth Judicial District, Tex., and an-

other. Application for leave to file petition denied.

Geo. M. Hopkins, of Denton, for appellant.

CONNER, C. J. [1] The foregoing petition having been considered, we are of the opinion that the motion for leave to file should be denied. In order for an applicant to be entitled to the writ prayed for, it is necessary that the petition therefor should show every fact necessary to entitle him to the relief sought. City of Amarillo v. Slayton & Co. (Tex. Civ. App.) 208 S. W. 967, and authorities therein cited.

The alleged errors of the trial court in refusing to retax costs, and in denying the relator's right to prosecute the suit below upon the affidavit of inability to pay costs, can only be reviewed by us after our jurisdiction has been invoked by a sufficient cost bond or an affidavit of inability to pay costs as prescribed in article 2098, Rev. Statutes. It is alleged that:

"On the 28th day of March, 1925, this relator, being unable to make an appeal bond, filed his affidavit of inability to give such bond in regular form, and which was sworn to before the county judge of Denton county, Tex."

The application further shows that upon the filing of this affidavit it was contested, as the statutes provide may be done, and the district judge heard and determined the sufficiency of the affidavit upon the evidence submitted. A copy of this evidence is attached as an exhibit to the application, and the correctness of the trial judge's conclusion in declaring the relator's showing of an inability to give the usual cost bond for an appeal, or to pay the costs, or any part thereof, and in denying his right of appeal upon the affidavit presented, is to be determined by us from the facts and evidence presented.

Article 2097, Rev. Statutes, reads as follows:

"The appellant or plaintiff in error, as the case may be, shall execute a bond, with two or more good and sufficient sureties, to be approved by the clerk, payable to the appellee or defendant in error, in a sum at least double the probable amount of the costs of the suit in the Court of Civil Appeals, Supreme Court and the court below, to be fixed by the clerk, conditioned that such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect, and shall pay all the costs which have accrued in the court below, and which may accrue in the Court of Civil Appeals and the Supreme Court."

Article 2098 reads:

"Where the appellant or plaintiff in error is unable to pay the costs of appeal, or give security therefor, he shall nevertheless be entitled to prosecute his appeal; but, in order to do so, he shall be required to make strict proof of his inability to pay the costs, or any part

thereof. Such proof shall be made before the county judge of the county where such party resides, or before the court trying the case, and shall consist of the affidavit of said party, stating his inability to pay the costs; which affidavit may be contested by any officer of the court or party to the suit, whereupon it shall be the duty of the court trying the case, if in session, or the county judge of the county in which the suit is pending, to hear evidence and to determine the right of the party, under this article, to his appeal."

[2] The statement of facts before us shows that the relator, John L. Heard, testifying in his own behalf, testified in substance that he resided in Denton county; that he had no property except "an old Ford touring car 1917 model," not in running condition; that it is not worth more than $25, and has not been run since January; that he had no other property; that he was willing for the automobile to be sold and the proceeds applied to the payment of costs in this case; that he farmed all of his life until 1921; that the adverse crop years after the war broke him; that he came to Denton and went into the oil business, did well for awhile, but when domestic troubles started his business went to the bad and he failed; that he went into the candy business and failed; that he went into bankruptcy in 1921, and since that time he had done whatever he could get to do; that he had no skill except as a farmer; that he worked at Wichita Falls about seven months and got about $3.25 a day, but this place failed him about a year ago; that he worked on a farm during harvest and threshing and got $2.50 a day; that he worked at the Garza Dam and got $3 a day, but when cold weather came on he took rheumatism, and could not do the work any more; that he had to pay $1.25 a day for board, and made merely enough to live on; that he had no credit, and was injured in an automobile accident in Dallas on the 14th of March, 1925, had his hip fractured and shoulder, knee, and ankle sprained, and he is now confined in St. Paul's Sanitarium at Dallas, but absent on a five hour leave of absence; that he did not know who was paying his sanitarium and doctor bills; that he tried to make a cost bond in this cause, but his friends told him he did not have any chance to make any money, and they could not afford to sign his bond; that he "finally got some of them to sign a bond with a maximum limit of $100," and filed this bond on the 2d of March, but that this bond was refused because of its limitation in amount; that he then filed an affidavit of inability to give further security for costs before the court dismissed the case; that the case was dismissed on the 9th of March, and he was injured on the 14th of March thereafter, and did not have a chance to try to get any one to sign his appeal bond; that his financial condition was no better after the case was dismissed than it was when he was trying to make the bond for costs; that he had no chance or any earning capacity "at present. * * * I have friends who would sign my bond for a limited amount, but would not sign for an unlimited amount. I never asked any one to sign my appeal bond in this case. I never made any effort to file the bond."

Nick Akin testified in behalf of relator, in substance, that he was a deputy sheriff of Denton county, and knew John L. Heard, and had had occasion to observe his financial condition; that he knew him at the Garza Dam; that he slept in the back of a store there and ate at the same restaurant where the witness ate; that he gathered up shoes and brought them to Denton to be repaired; that he was having a hard time getting by at the restaurant, and had no credit, and was considered a·broke man; that he seemed to have rheumatism.

Lula A. Heard, testifying in behalf of respondents, testified that John A. Heard was her husband; that she was married to him in 1902, and that he was an able-bodied man; that he had a job at Wichita Falls that paid him $3.25 a day; that he had not been paying much towards the support of the children for the last year and a half; that he had not given them more than $50 or $75 during that time; that he had an automobile, or did have one; that he farmed from the time he married until about 1921; that he went through bankruptcy in 1921; that he went into the oil business and failed, then into the candy business and failed; that she knew of nothing he had except an automobile, and did not know what it was worth; that it was an old Ford; that she did not know whether he had rheumatism or not; did not know when he lost his place at Wichita Falls; that he worked on her farm during the time he was farming.

R. L. West, district clerk of Denton county, testified in behalf of defendants that he first approved the cost bond filed in this cause on the 2d day of March, 1925, without noticing that it was limited in amount, but, after his attention was called to this fact, he withdrew his approval; that at the time he withdrew his approval the costs on the case amounted to about $142; that he had a conversation with Mr. George M. Hopkins, attorney for plaintiff, during the last term of court about making a deposit to cover costs. "I think I told him that a deposit of $50 would be sufficient, but later told him that the deposit should be about $70."

The foregoing is all of the testimony presented upon the contest.

In the case of Teat v. McGaughey, 85 Tex. 478, 22 S. W. 302, our Supreme Court held, quoting from the headnote:

"A writ of mandamus will lie against an officer to compel the performance of a plain and imperative duty. The act to be compelled must

be one which he has no discretion to refuse to perform, and which does not call for the exercise of his judgment upon matters of fact."

It is to be noted from the testimony upon the hearing of the contest that there was evidence to the effect that the relator is an able-bodied man; that at times he was employed in labor other than farming, and received more than $3 per day; that the testimony tending to show the relator is without credit, without property, and unable to work, is principally that tendered by him as a witness for himself. While he states that he was injured in an automobile accident and confined in a sanitarium, he does not testify that his injuries are permanent, and it does appear that he was able to leave the sanitarium to attend the contest. It further appears that he had sufficient credit or the confidence of solvent people that enabled him to give a bond for security of the costs to the extent of $100, and he says himself:

"I have friends who would sign my bond for a limited amount, but would not sign my bond for an unlimited amount."

It further appears his counsel was told by the clerk that a deposit of $70 would be accepted to cover the costs of the suit. The costs of appeal from the order refusing to approve the affidavit filed in lieu of an appeal bond in the very nature of the proceedings must be small. At most it could only involve the costs of a transcript containing the petition, the affidavit filed by relator in lieu of an appeal bond, the court's ruling thereon, and the limited amount of evidence heard by the court at the time of the hearing. It does not appear that appellee's friends would have been unwilling to give a bond sufficient in extent to cover the costs of appeal, but he testified:

"I never made any effort to file the bond."

An examination of the cases will show that our courts have been liberal in granting an indigent suitor the right of appeal upon his filing of an affidavit of inability to give security for costs, or to pay the whole or a part. But in the first instance, the discretion of whether this shall be done upon a hearing is committed to the trial court in the nature of the proceeding. He is the better judge of the credibility of the witnesses and of the weight to be given to their testimony, and we feel unable to say that the able trial court in passing upon the question in controversy manifestly erred in an exercise of his judgment upon the matters of fact submitted to him.

In the case of Murray v. Robuck, 89 S. W. 781, by the Court of Civil Appeals at San Antonio, it is said:

"That the relator in that case "was not required to prove on the contest of his affidavit his inability to give security for costs, by showing that he had made an effort to get sureties on a cost bond, and that such efforts were unavailing."

[3] That statement may be approved in a case where the evidence before the court was, as in that case, that had the contestee made the effort it would have been unavailing. The statement, however, ought not to be construed as a holding that a litigant able to get security for costs would be accorded the right of an appeal by merely showing on a contest that he was not at that time able to pay the costs, or any part thereof. The right of appeal is not an inherent one. It is a privilege merely, given by law, and can be exercised only when the regulations limiting the right have been at least substantially observed.

We think a reading of the two articles of the statutes, which we have hereinbefore noted, relating to the subject, plainly implies that a litigant, in order to make it imperative on the part of the several officers whose duty it is to make up the record, must clearly show that he is both unable to pay the costs of appeal, or any part thereof, or to give security therefor. As already indicated, we feel unable to say that the trial court abused his discretion in denying relator the privilege of appeal upon the showing made.

We therefore conclude that relator's application for leave to file his petition for mandamus should be denied.