## STARK v. DODD, District Clerk, et al.
### No. 2755.

Court of Civil Appeals of Texas. Beaumont.
Nov. 13, 1934.

Rehearing Denied Nov. 21, 1934.

Davidson & Bowers, of Beaumont, and Henry H. Brooks, of Austin, for relator.

Williams, Lee, Sears & Kennerly, of Houston, and Alan B. Cameron, of Orange, for respondents.

O'QUINN, Justice.

October 9, 1933, in a suit to recover alleged commissions for the sale of certain property, brought by relator and another, against W. H. Stark, Miriam M. Stark, wife of W. H.

Stark, and H. J. Lutcher Stark, in the district court of Orange county, a judgment was rendered in favor of the defendants. On April 3, 1934, within six months after the rendition of said judgment, relator filed in the district court of said Orange county his petition for writ of error to remove said cause and said judgment therein to the Court of Civil Appeals, Ninth Supreme Judicial District, at Beaumont, Tex., for revision and correction, and on said date, April 3, 1934, filed in said district court his affidavit in lieu of writ of error bond. Service on the writ of error petition was perfected on April 9, 1934. On April 12, 1934, W. H. Stark, one of the defendants in error, filed in said district court his contest of relator's affidavit in lieu of writ of error bond. The district court being then in vacation, the affidavit was presented to H. A. Watts, county judge of Orange county, who set same for hearing on Tuesday, April 17, 1934. Upon hearing on said date, at which neither relator nor his counsel was present, on the evidence adduced by contestant, the right to appeal by affidavit in lieu of bond was denied. Motion was duly filed by relator to set aside the order denying him the right to appeal by affidavit in lieu of bond, and to reopen the matter for further hearing. The county judge set this motion for hearing on April 27th. On that date relator appeared in person and by attorney, and contestant and attorney were also present. Relator testified at considerable length. Contestant did not offer any testimony additional to that produced on the original hearing. At the conclusion of this hearing Judge Watts declined to set aside his former findings and order denying relator the right to appeal by affidavit in lieu of bond. This is an appeal from that order in the form of an application for a writ of mandamus by relator against respondent T. M. Dodd, clerk of the district court of Orange county, commanding him, as such clerk, to prepare and deliver to relator or his attorney a transcript of the proceedings in said cause; and against H. R. Burnaby, the court reporter of said court and who reported the trial of said cause, to make and deliver to relator or his attorney a statement of facts covering the evidence adduced upon the trial of said cause.

Relator's propositions that an appellate court has jurisdiction to review an order refusing the right to appeal upon an affidavit in lieu of an appeal bond, and that mandamus is the proper method of appeal from such order, need no discussion, as that has long been the settled rule.

Relator's only other proposition is that: "The hearing of a contest of an affidavit in lieu of an appeal or writ of error bond is a judicial or quasi judicial proceeding, of which the party appealing shall have notice and be given an opportunity to be heard, before any judgment or order shall be given or established against him."

This proposition grows out of these facts: As above stated, the judgment was rendered against relator in the district court of Orange county on October 9, 1933. On April 3, 1934, relator filed his petition for writ of error to remove the cause for·review to the Court of Civil Appeals. On said date he filed his affidavit in lieu of writ of error bond. On April 12, W. H. Stark, one of the defendants in error, filed his contest of relator's affidavit. The district court being then in vacation, the affidavit was presented to H. A. Watts, county judge of Orange county, who set same for hearing on Tuesday, April 17, 1934. No notice of any kind of said hearing was given to relator, but the attorney for contestant on April 13, 1934, wrote a letter to one of the attorneys for relator, which attorney had been active in representing relator, notifying him that the hearing upon the affidavit and contest was set for "Tuesday, April 17th, 1934." This letter was correctly addressed to said attorney at Beaumont, Tex., and duly reached his desk for attention. It so happened that relator's said attorney was absent from the city of Beaumont on business that detained him until the day of April 17, 1934, the day the matter was set for hearing. Said attorney testified that when he reached his office on that day he opened the letter notifying him of the hearing, but that he took the statement that the hearing was set for Tuesday to mean the following Tuesday, or Tuesday, April 24, 1934, and mailed the letter on to another attorney for relator at Austin, Tex., and that he was not aware of his mistake until he got a letter from said attorney calling his attention to the fact that the time for the hearing had already elapsed. The time for the hearing was set for 1:30 p. m. The letter was read by relator's attorney "around noon." He says that if he had correctly understood the letter he would not have gone to Orange, which was only some twenty-two miles distant, because he was tired out from his travels and work during the several previous days, but that he could have reached Orange, and that he would have probably called the judge over the phone and asked for postponement of the hearing until the next day. The court deferred the hearing until about

2:15 p. m. waiting for relator and his attorney to appear. When they did not appear the hearing was had, and contestant introduced considerable evidence as to the ability of relator to pay the costs on appeal, or to give security therefor. At the close of the hearing the court made his findings of fact and concluded that relator was "clearly able to pay or secure the costs of appeal," and so entered his judgment or order that relator was "not entitled to prosecute" his appeal upon affidavit of inability to pay the costs of appeal or to secure the paying of same. He prepared a transcript of said hearing embodying therein the evidence adduced and his findings and order thereon and filed same as a part of the record in the case.

 Article 2266, R. S. 1925, as amended by Acts of the 42d Legislature, 1931, p. 226, c. 134, § 1 (Vernon's Ann. Civ. St. art. 2266), is the one under which the proceedings were had. It reads: "Where the appellant or plaintiff in error is unable to pay the costs of appeal or give security therefor, he shall, nevertheless, be entitled to prosecute an appeal by making strict proof of such inability, which shall consist of his affidavit filed with the Clerk of Court stating that, he is unable to pay the costs of appeal, or any part thereof, or to give security therefor. Any Officer of Court or party to the suit, interested, may contest the affidavit, whereupon the Court trying the case, if in session, shall hear the contest; but if in vacation, the same shall be heard by either the Judge of the Court or the County Judge of the county where the suit is pending and on such hearing evidence may be introduced, the right of the party to appeal shall be determined, the findings certified to, and filed as a part of the record of the case. It will be presumed, prima facie, that the affidavit of appellant speaks the truth and unless contested within ten (10) days after being filed the presumption shall be deemed conclusive. The appeal will not be dismissed for defects or irregularities in procedure, either of form or substance, without allowing the party appealing a reasonable time, not exceeding ten (10) days after notice, to cause to be corrected or amended such defects or irregularities."

The statute does not in terms provide that relator shall be given notice of the filing of the contest, or the date of hearing. As the law requires that the affidavit of inability and the contest thereof be filed with the clerk of the court in which the case was tried, under the general rule each party would be required to take notice of all pleadings filed in the case, and no special notice would be necessary; but as the trial court was in vacation and the affidavit and the contest thereof must have been presented to the county judge for hearing, we think relator or his attorney should have had notice allowing sufficient time in which to appear and answer the contest. Any manner of actual notice would be sufficient. The notice sent relator's attorney at Beaumont was received at said attorney's office and remained there for several days before it was read by the attorney. He admits that he could have reached Orange, by going immediately after reading the notice, in time for the hearing, but says that if he had correctly understood the notice when he read same, he would not have gone for the reason that he had just returned from several days' travel and worries in other business matters, and was too tired and worn out to go, but that he probably would have called the court over the phone and asked for a short delay in the hearing. There is not a hint but that if he had done so that the delay would have been granted. We do not think that under the circumstances want of notice was of itself grounds for holding the hearing unlawful and setting same aside.

 But it is insisted that relator has not had his day in court; that he has been deprived of his right to produce testimony supporting his affidavit establishing his right to appeal on affidavit. Soon after Judge Watts filed in the district court his findings and conclusions in the hearing had on the 17th day of April, relator filed his motion to set aside said order refusing him the right to appeal upon affidavit of inability, and on April 27, 1934, said motion was heard, both parties being present in person and by counsel, and relator was permitted to testify at length in support of his said affidavit. The court refused to set aside his prior order. We have before us a complete transcript—statement of facts—given at this hearing. We also have the transcript of the findings and conclusions of Judge Watts on the first hearing. In that hearing the court found, among other things, that relator was the sole plaintiff in cause No. 6491, styled A. M. H. Stark v. Lutcher & Moore Lumber Company, then pending in the district court of Orange county, in which relator was claiming that he was entitled to damages in the sum of $105,000 for the manufactured value of certain timber alleged to have been cut off of 555 acres of the C. A. Patillo league of land situated in Orange county, and 131 acres of the J. M. Henrie survey in Orange county, by said lumber company, and in the alternative

for $85,000 damages for the stumpage value of the timber cut. That relator had deposited money for court costs in said suit, a portion of which then showed to his credit. That relator was one of seven children, heirs of Donna J. Stark, deceased, and as such entitled to a one-seventh interest in her estate; that in a partition suit in the district court of Orange county in a judgment rendered October 17, 1931, said one-seventh was partitioned to Anson T. Feagin, son-in-law of relator, but that in fact said property was that of relator, and that among same was a plat of land 111 feet by 200 feet, in block 5, Gates survey of the city of Orange, and 38.5 acres of the Anthony Harris survey in Orange county. Also 169 acres of land, a part of the F. Allbright survey in Newton county, Tex., and that this had not been partitioned among her heirs. That O. M. Stark, a brother of relator, died in Orange county May 9, 1926, unmarried and without issue, leaving certain real and personal property, situated in said county, of which relator had a one-sixth interest, and while said estate was in process of administration, the assets had not been distributed. That in the instant suit, cause No. 6609, the plaintiffs, including relator, did furnish a cost bond which was approved by the district clerk, respondent Dodd, and that the costs incurred in two trials in said court had practically all been paid. Judge Watts further found that relator owned a home in the city of Orange consisting of lots 9 and 10 in block 60 of the Sheldon addition to the city of Orange, on which was situated a two-story residence building, but that relator some four years ago left his said home and removed with his family to the city of Austin, where he ever since has and now resides. That relator had leased said residence to one C. C. Hubert for one year from November, 1933, in consideration of said Hubert transferring to relator certain stock and interest in the Blue Line Oil Company then operating in Orange county.

On the instant hearing—on the motion to set aside the former order denying relator the right to appeal upon affidavit in lieu of bond—relator admitted his suit pending for $105,000 damages for value of timber cut; he made no denial or in any manner detracted from his ownership of the right to recover in that suit, merely saying the cause had been pending for sometime and had never been tried. He explained the removal of himself and family to Austin, saying it was for the purpose of educating their children; that two of them were then attending the State University. He said that he stayed most of the time in Orange, and admitted leasing the residence to Hubert, but said the oil stock was given to his wife, and was of doubtful value. He admitted that he was one of seven heirs of Donna J. Stark, but said that he had transferred all his interest in her estate to his son-in-law, Anson T. Feagin, in consideration that Feagin pay $1,850 that he (relator) owed the estate, and the remainder, after paying said debt, be held in trust for his wife. He admitted the existence of the 169-acre tract of land in Newton county, but said that he did not know what it was worth, and that whatever its value, it was a part of his interest in his mother's estate, and all of that had been by him transferred to his son-in-law Feagin. That Feagin denied that he (relator) had any interest in any of the properties of the estate. He said the deed from him to Feagin was not of record. The original was not produced. He testified that his interest (one-sixth) in his brother O. M. Stark's estate was of no value because his sister, Mrs. Fountain, who was administratrix of the estate, told him the estate owed more than it could pay. (This evidence was eventually struck out because hearsay, self-serving, and not best evidence.) He testified that he had no money, and that there were several judgments against him which he could not pay. On cross-examination, in answer to the question, whether he conveyed all his interest in his mother's estate to his son-in-law Feagin for the purpose of putting said property beyond the reach of his creditors, he said: "Call it that way if you want to." In answering how much he would agree for his wife to take for the property conveyed to Feagin, he said:

"I might agree for her to take $5,000.00. I would not say I would but I might. I would agree for my wife to take $10,000.00.

"Q. Then that property you conveyed to Feagin was worth more than $1850.00? A. I did not say that.

"Q. The property you conveyed to Feagin was worth more than $1850.00? A. I don't think it was worth much more than that if any.

"Q. How then do you think that your wife should get $5,000.00 or $10,000.00 out of it? A. Well, other property that I conveyed to him. I conveyed all I had. To hold in trust for my wife. He was a good trader and could handle it better than I could. I guess he could have handled the property as it stood in her name."

Relator admitted that among other property that he transferred to his son-in-law Fea-

gin was 82 shares of Texas Company stock. In answer to the question whether he owned any property in Louisiana, relator answered: "No, I had three or four forties near Stark somewhere, but think it has been sold for taxes, I think it has and no doubt about it; it was sold for taxes along about I think about 1927,—I think it was sold for taxes, but don't know for sure. I know that two forties were, and I think the other two were." He testified that several judgments for several thousand dollars were hanging over him, the justice of which he challenged.

We have set out the substance of the evidence on both hearings rather fully. The law, article 2266, supra, requires that the person seeking to appeal by affidavit in lieu of bond, in order to be entitled to do so, must make *strict* proof of his inability to pay the costs, or secure the paying of same. It is true that it also says that his proof shall consist of his affidavit filed with the clerk of the court stating that he is unable to pay the costs of appeal, or any part thereof, or to give security therefor. But this does not mean that when such affidavit is made and a contest of same is filed, that the person filing the affidavit is relieved from producing evidence in support of the affidavit. If that could be said, then what would a contest of the affidavit avail? Furthermore, the statute provides that when the affidavit is contested the judge hearing the contest *shall hear evidence* and from it determine the right of the affiant to appeal without bond. The burden, in such case, is upon the affiant to make *strict* proof of his inability. In other words, to show *clearly* that he is unable to pay the costs of appeal, or any part thereof, or to give security therefor.

Considered in the light of the first hearing, there can be no question but that the order of the court denying the right to appeal without bond was correct. When examined in the light of the evidence produced by relator in the last hearing, April 27th, the testimony of relator himself we think very unsatisfactory. His testimony as to his interest in his mother's estate, also his interest in the estate of his deceased brother, and the property owned by him in Louisiana, was very uncertain. By the undisputed evidence, at the very time he made the affidavit he then had pending in the same court a suit for $105,000 damages for the wrongful cutting of timber off of 686 acres of land, which certainly meant that he either owned the land and timber, or that he owned the timber, or he would not have instituted the suit. To say the least, he was there asserting a very valuable right which, if true, was still his property. Then, too, it was undisputed that in the instant suit he had given a cost bond, and the costs, or at least most of them, had been paid. If he could, and he did, give a bond for costs in the first instance, why could he not do so in the last? There is no explanation of this feature of the contest. The question was one of fact for the court, and after hearing and considering the evidence, the court determined the question against relator. We think no abuse of the court's discretion is shown.

■ Moreover, the respondent H. R. Burnaby, court stenographer, against whom a mandamus is sought to compel him to prepare and deliver a statement of the facts adduced upon the trial, answers under oath and says that at no time, either at the time the mandamus suit was filed, prior thereto, or since, has relator or any one else demanded of him that he prepare and deliver to relator, or any one for him, a statement of facts as alleged. Under this state of facts, no mandamus could be awarded against him, for certainly one cannot be mandamused to perform a duty which he has not refused to do. He was under no duty to prepare a statement of facts in the case until such was demanded of him which he swears has not been done.

■ If, under the record, it should be held that the judge hearing the matter abused his discretion, which we think would not be justified, in denying relator's right to appeal by affidavit in lieu of appeal bond, then as mandamus cannot be awarded against respondent Burnaby, the court reporter, writ of mandamus against respondent Dodd, district clerk, would bring up only the transcript of the court proceedings without a statement of the facts, and as the record before us shows that the controlling question in the case was whether the relator had a verbal contract with W. H. Stark, one of the original defendants, employing relator to make sale of or find suitable purchaser for certain property as alleged in his petition, and was to receive as compensation the commissions alleged in his petition, which question was by the court submitted to the jury in a special issue, and to which issue the jury answered, "No," thus negativing the relator's right to recover on the alleged contract, there being no statement of facts, the only error we could look to would be fundamental, which from the transcript would not appear; the issue being proper, and properly submitted, and the answer of the jury being responsive to the issue, and the judgment following the verdict.

So, the granting of a writ of mandamus requiring the clerk to prepare and deliver the transcript to be filed in this court would not accomplish anything for relator, but would result in further delay in finally disposing of the case, and the accumulation of further costs.

For the reasons above discussed the writ of mandamus should be refused, and it is so ordered. Writ refused.