### DURANT v. STONE et al.

No. 10562.

Court of Civil Appeals of Texas. Galveston.

Oct. 22, 1936.

Concurring Opinion Nov. 3, 1936.

Henry W. Flagg and McDonald & Wayman, all of Galveston, for relator.

J. C. Canty, District Judge, pro se.

Stewarts, of Galveston, for respondent Mildred B. Stone.

GRAVES, Justice.

As presented here, this is an original application by J. M. Durant for mandamus against officers of the Tenth district court of Galveston county, that is, Honorables J. C. Canty, J. C. Gengler, and Miss Mildred B. Stone, the district judge, the district clerk, and the official court-reporter, respectively, seeking to be permitted to prosecute an appeal without the payment of or the giving of security for costs in a judgment adverse to him rendered by that district court in 16 causes that were consolidated therein, all as being pursuant to R.S. art. 2266, as amended by Acts 1931, c. 134, § 1 (Vernon's Ann.Civ.St. art. 2266); to that end, he also filed an affidavit in this court, as he likewise did in the trial court, of his inability to pay such costs, or any part thereof, or to give security therefor, and prays as follows against the named officers: "Wherefore, Relator prays that Respondents be cited to answer this petition, and that upon a hearing of this cause he have judgment compelling and requiring the Honorable J. C. Gengler, Clerk of the District Court of Galveston County, Texas, Tenth Judicial District, to make and certify to a transcript, as required by law for an appeal, and that Respondent Mildred B. Stone be compelled and required to prepare and certify to a Transcript of the evidence adduced and admitted upon the trial of said consolidated cause, and that the Honorable J. C. Canty, Judge of said Court, be compelled and required to approve the Transcript of the evidence when prepared by Respondent Mildred B. Stone; and that Respondents be cited to show why such a Writ of Manda-

mus should not issue, and that Relator recover all costs in this behalf expended."

The record filed here with the application shows that, in an effort to comply with the statutory procedure referred to, a like application had been first presented to the district judge named, in vacation, and that after trying the matter out on full pleadings and evidence for both parties, he refused the same application as so made before him, in this judgment:

"On this, the 8th day of September, A. D. 1936, in vacation, came on to be heard before the District Judge of the 10th District Court of Galveston County, Texas, the contest of the application of the defendant, J. M. Durant, for permission to prosecute his appeal in said Consolidated Causes without giving bond or security for costs. Whereupon came the defendant in person and by his attorneys, and the plaintiffs in said Consolidated Causes appeared by their attorneys, whereupon said contest came on to be heard and the Court having heard the evidence and being fully advised docs find that the defendant, J. M. Durant, is not entitled to prosecute his appeal in said Consolidated Causes without giving bond or security for costs, and does find that said J. M. Durant is possessed of property, real and personal, which is subject to execution and is able to give security for costs, and the Court does further find that said J. M. Durant has made no offer to pay any portion of the costs of Court, has paid no part thereof, and made no effort or attempt to furnish security or bond for costs of appeal, or any part thereof, in the above entitled Consolidated Causes.

"It is, therefore, ordered, adjudged and decreed by the Court that the application filed by said defendant, J. M. Durant, for permission to appeal in said Causes without giving bond or security for costs be, and the same is hereby, denied, and that the contest filed by the plaintiffs in said Causes be and the same is, affirmed and upheld. To which the defendant in open Court excepts and in open Court gives notice of appeal to the Court of Civil Appeals for the First Supreme District of Texas, at Galveston.
"J. C. Canty, Judge."

There have further been filed, as parts of the proceeding in this court, an agreed statement of all the evidence adduced upon the like hearing before the district judge, approved and ordered filed by him, together with sworn answers herein by the district judge and the official court reporter, as above named; these answers contested the truth of the averments made in relator's affidavit, and that of the court reporter especially denied that any demand had ever been made by him upon her to prepare and deliver to him the statement of facts referred to in his affidavit, or that she had ever refused to do so either to himself or anyone for him.

On the showing disclosed by the affidavits initially filed here, and the agreed statement of facts on the like hearing before the trial judge, this court also will refuse the coveted writ; perhaps it is not officially bound by the judge's findings made below as it would be in instances on direct appeal where it exercises appellate jurisdiction, but those findings are at least persuasive, and this court is further influenced by the same considerations arising out of an examination of the same testimony as presumably moved the learned trial judge to likewise refuse such writ.

Our further views, are so well presented in the able brief filed here in behalf of the respondents that this much of it is adopted as the further opinion of this court:

"In consolidated cause No. 50,508, styled Rebecca Beekman Bonart et al., v. J. M. Durant et al., in the district court of Galveston county, Tex., Rebecca Beekman Bonart and others filed suit in trespass to try title for title and possession of 26½ lots of a subdivision of survey 24, I. & G. N. R. R. lands, in Galveston county, Tex., the total amount of acres involved being 265. It was admitted that plaintiffs owned the record title. Defendant, J. M. Durant, claimed the premises under the 10 years' statute of limitation. Upon the trial, judgment was entered in favor of plaintiffs and against defendant. J. M. Durant gave notice of appeal, and filed an affidavit of inability to pay costs, which was contested within due time, and upon a hearing the trial court found against relator. In the present proceeding, relator attempts to compel public officials to perform the acts set out in his prayer therefor by mandamus.

"Mr. Durant's own testimony shows that he had some interest in the minerals in a tract in section 24 of the I. & G. N. R. R. survey:

"Q. Since the institution of this suit you have acquired an interest in some minerals, have you not, in this Section 24? A. Well, there is some contemplated trade.

"Q. You made a settlement with Mr. Jackson, the attorney, for one-fourth of forty acres? A. Well, I haven't seen it.

"Q. Isn't that true? A. I can't say that the settlement has been completed.

"Q. Did you make a settlement with Mr. Jackson? A. No sir, I didn't make a settlement with Mr. Jackson.

"Q. Did your attorney make a settlement with Mr. Jackson? A. I am not sure. I haven't seen all of the data on it. .

"Q. What arrangement did you make with Mr. Jackson's client? A. Well, I couldn't say.

"Q. Did your attorney tell you anything about it? A. He said he was contemplating a settlement.

"Q. Didn't he tell you he consummated a settlement? A. I don't think he told me that.

"Q. You are not positive? A. No, sir.

"Mr. Durant was in the dairy business and sold about 100 gallons of milk per day at a price of 18 cents per gallon. He took in $135.70 on August 8, 1936; $120.96 on August 15, 1936, and $141.20 on July 25, 1936. The gross receipts for the preceding year were $5,307.60. He sold chickens and eggs, but did not keep up with the return from same. He had 298 head of cattle, and a team of mules. He had a family car and a new car. He made no effort to get any one to sign his bond.

█ "In order for one who is unable to pay the cost of appeal, or give security therefor, to prosecute his appeal upon affidavit of inability to pay costs, article 2266 of the Revised Statutes of 1925, as amended by the Acts of the 42nd Legislature of 1931, c. 134, § 1 (Vernon's Ann.Civ.St. art. 2266) requires that he make strict proof that 'he is unable to pay the costs of appeal, or any part thereof, or to give security therefor.'

█ "In the case of Heard v. Pearman (Tex.Civ.App.) 275 S.W. 271, it is expressly held that in order to make it imperative on the part of the several officers whose duty it is to make up the record, relator must clearly show that he is unable to pay the cost of appeal, or any part thereof, or give security therefor. J. M. Durant was shown by the testimony to be a man doing a large dairy business. His testimony showed that he was always able to procure the necessary modern devices and equipment for his dairy business. That

just prior to the trial of this case he had procured a new Ford truck, and that he had a family automobile. Evidence further showed that Durant mortgaged 290 head of his cattle to the Bank at Alvin between the date of the trial of this case and the date of hearing upon the pauper's oath. The evidence further showed that Durant's gross income amounted to over $5,000 per year. When Mr. Durant was asked 'Who did you ask to join you in making a bond?' . he answered, 'I have asked no one, because I have nothing to put up.' Durant's own testimony shows that he made no effort to make a bond. The right of appeal is not an inherent one. It is a privilege, merely given by law, and being granted only when the limitation upon the one claiming the right has been at least substantially observed. In the present case Durant made an affidavit that he was unable to give security for costs, yet his own testimony shows positively that he made no effort to procure a bond to secure the costs of the appeal, or any part thereof.

"Durant's own testimony shows that he owned 40 acres of land, and it is only by inference from the statements made by Durant's counsel that any part thereof is suggested to be Durant's homestead and exempt under the laws of the state of Texas. Certainly it is nowhere shown that the entire 40 acres, which Durant testified that he owned, constituted his homestead and was therefore exempt property. In addition to the above, it is clearly apparent that Mr. Durant owned, or claimed, mineral interest in a tract of land referred to in his testimony. His testimony with reference to his mineral interest and the contemplated trade shows his attitude and his indifference toward giving security for the costs in this cause. Certainly before permitting Mr. Durant to prosecute his appeal without giving security for costs, or paying the costs, he should be required to ascertain just what property rights he acquired in the contemplated settlement referred to.

"In this cause which Mr. Durant attempts to appeal, he is asserting title to 265 acres of land. At the hearing upon the contest of his affidavit of inability to pay costs, he said that all the land he owned in Galveston county was a 40-acre tract. The land in controversy in this suit is 265 acres in Galveston county.

"As shown by the answer of the trial court judge, he found as follows:

" '(a) I found as a fact that J. M. Durant had an income of over $5000.00 per year and property sufficient to pay all, or at least part of the costs in said cause, and to give security therefor.

" '(b) I found as a fact that J. M. Durant made no effort to pay any part of the costs in said cause.

" '(c) I found as a fact that J. M. Durant made no effort to make a bond for costs in said cause, or for any part thereof.'

"Mildred B. Stone, of the Tenth judicial district court, one of the respondents herein, answered under oath that she had not refused to prepare and deliver to relator, or to any one for him, a statement of facts, as alleged.

■■ "The writ of mandamus will not lie to compel a public official to do what he or she has not been requested to do. In the case of Stark v. Dodd (Tex.Civ.App.) 76 S.W.(2d) 865, 869, the court said: 'Moreover, the respondent H. R. Burnaby, court stenographer, against whom a mandamus is sought to compel him to prepare and deliver a statement of the facts adduced upon the trial, answers under oath and says that at no time, either at the time the mandamus suit was filed, prior thereto, or since, has relator or any one else demanded of him that he prepare and deliver to relator, or any one for him, a statement of facts as alleged. Under this state of facts, no mandamus could be awarded against him, for certainly one cannot be mandamused to perform a duty which he has not refused to do. He was under no duty to prepare a statement of facts in the case until such was demanded of him which he swears has not been done.'

"As indicated supra, the controlling question in the case he so sought to appeal on a pauper's oath was whether or not relator had acquired title to and right of possession of the land under the 10 years' statute of limitation, the burden being upon him to establish that claim by proof.

■ "Therefore, without a statement of facts, the appellate court would be unable to determine whether or not the trial court had erred from the transcript alone, since it would not contain the testimony; further, since a mandamus could not be awarded against the court reporter for the reason already given, neither should one issue against the district clerk, on the principle thus also applied in the cited case of Stark v. Dodd (Tex.Civ.App.) 76 S.W.(2d) 865, 870: 'The granting of a writ of mandamus requiring the clerk to prepare and deliver the transcript to be filed in this court would not accomplish anything for relator, but would result in further delay in finally disposing of the case, and the accumulation of further costs.' "

Writ of mandamus refused.

Refused.

On Application for Mandamus.

PLEASANTS, Chief Justice (concurring).

While the question may not be free from doubt, I concur in the opinion of Justice GRAVES that the application for mandamus should be refused upon the first ground stated in the opinion.

It seems to me that the answers given by the relator of whether he owned an interest in the oil under the lands mentioned in the agreed statement of facts brought up with the record are so evasive and uncertain as to the quantity and value of such oil lands as to justify the trial judge in holding that relator had failed to make the strict proof required by the statute to entitle him to prosecute his appeal without paying the costs or any part thereof or giving security therefor. Because of this fact issue in the case, I think we should not hold that the trial judge abused his discretion in sustaining respondents' contest of relator's right to appeal upon the pauper's oath filed by him.

It may be that he was also required to make some effort to procure money by giving a mortgage upon, or selling an interest in, the lands claimed by relator under the statute of limitation which furnish the subject-matter of the suit from which the judgment in this case is sought to be appealed on a pauper's oath.

In so far as his other property is concerned, I think the evidence clearly shows that he could not be and was not required to make any effort to pay the costs or any part thereof or give any mortgage on such property as security for the costs of this appeal.

I cannot, however, concur in the soundness of the second ground stated in Justice GRAVES' opinion for refusing the application for mandamus.

It seems to me wholly unreasonable to hold that when respondent, Mildred B.

Stone, by her sworn contest of relator's right to appeal the case upon his pauper's oath had unmistakably shown her opposition to his appealing the case without payment of the cost or giving security therefor, could be heard now to defeat his right to appeal on his pauper's oath on the ground that relator had not asked her to make up the statement of facts for no compensation. The law never requires the doing of a vain or useless thing for the protection of the legal rights of a litigant.