**Michael V. COSTELLO and Roberto K. Celestineo, and all others similarly situated, Plaintiffs,**

v.

**Louie L. WAINWRIGHT, as Director of the Division of Corrections, State of Florida, et al., Defendants,**

**United States of America, Amicus Curiae.**

**Nos. 72–94–Civ–J–S and 72–109–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

July 10, 1973.

See also, D.C., 353 F.Supp. 1324.

Tobias Simon, Miami, Fla., for plaintiffs.

Daniel S. Dearing, Tallahassee, Fla., for defendants.

**ORDER**

CHARLES R. SCOTT, District Judge.

The Court has determined that it will be in the best interest of all parties and

of justice to appoint an expert special master pursuant to the provisions of Rule 53 of the Federal Rules of Civil Procedure. The purpose of such appointment would be to aid the Court in evaluating the quality of medical services and general health care available to the class plaintiffs, inmates committed to the custody of the Florida Division of Corrections, and in evaluating what if any, improvements should be made. Because this area of study is highly technical and involves medical knowledge beyond the expertise of the Court, the assistance of an expert special master who possesses the requisite medical capabilities is necessary.

■ The legal justification for the issuance of a *pendente lite* order requiring the defendants to participate in the conduct of a court-directed survey is apparent. There is no need to establish the existence of constitutional deprivations on the part of defendants prior to issuing *pendente lite* orders which may require defendants to take affirmative action. The only prerequisite to the issuance of such *pendente lite* orders is a "prima facie showing [by plaintiffs] . . . sufficient to demonstrate a likelihood of success at trial". Carter v. West Feliciana School Board, 396 U.S. 290, 292, 90 S.Ct. 608, 609, 24 L.Ed.2d 477 (1970) (Harlan, J., concurring). In that case, upon a prima facie showing that defendant school districts had been operating dual school systems based on race, those defendants were required, *pendente lite,*

> to collaborate [with the United States] in preparing plans for the immediate conversion to unitary, nondistricminatory school systems . . . [to] request the United States Office of Education to furnish technical assistance in formulating such plans and . . . [to] provide the Office of Education such information as may be necessary for the formulation of such plans, including bus route maps, pupil locator maps, and school capacities and enrolments.

United States v. The State of Mississippi, Civil Action No. 4706 (S.D.Miss., July 9, 1970). *See,* United States v. Texas Education Agency, 431 F.2d 1313 (5th Cir. 1970) (per curiam); United States v. State of Mississippi, Civil Action No. WC70–36K (N.D.Miss., July 9, 1970); United States v. Texas Education Agency, Civil Action No. H–70–CA–80 (W.D.Texas, August 7, 1970).

■ In this case plaintiffs have made a sufficient prima facie showing to demonstrate a likelihood of success at trial. Doctor Kenneth B. Babcock, medical expert retained by the defendants, has advised this Court of the present inadequacies of the Florida prison medical system. Furthermore, Mr. Louie L. Wainwright, Director of the Florida Division of Corrections, has, without qualification, also advised this Court that the Division of Corrections is not providing adequate medical care and services to the prisoners under its jurisdiction.

■ A complete medical survey will develop the facts which are necessary to enable the Court to rule on the substantive issues before it. Furthermore, the survey will enable the Court to structure the necessary and appropriate relief, if any.

Doctor Kenneth B. Babcock of Fort Lauderdale, Florida, has, at the request of the State of Florida, conducted surveys of the state prison system medical facilities. The appointment of Doctor Babcock as the party to direct the instant survey is not objectionable to any of the parties to this litigation. As a witness before the Court at an earlier stage of the proceedings in this case, Doctor Babcock has demonstrated his medical qualifications, experience and familiarity with the Florida prison medical system. He has been established as uniquely equipped to supervise such a survey.

The medical hospital factor is only one element of the over-all health picture in the Florida state prison system. Other disciplines which should properly be considered in any comprehensive survey of

the full spectrum of health care must include general health, sanitation and safety, sufficiency of psychiatric services, dental needs, dietetics, pharmaceutical control, medical record keeping and facilities for physical fitness. In addition, the following areas should properly be reviewed in the desired evaluation survey; clinical nursing services, medical technician programs, laboratory and x-ray technology facilities, preventive medicine programs such as scheduled physical examinations and immunizations, and general prison hospital administration.

The composition of a minimum survey team to assist Doctor Babcock in order to accomplish the Court's purpose should include:

1. A full-time Prison Hospital Administrator. The United States has offered the services of Doctor Joseph Alderete, United States Public Health Service, Medical Director and the Chief Medical Officer of the United States Penitentiary, Atlanta, Georgia. He is a medical doctor and a psychiatrist, as well as a prison hospital administrator.

2. A Chief Medical Technical Assistant. The United States has offered the services of Mr. Mark Thompson, Hospital Administrative Officer and Chief Medical Technician, Federal Correctional Institution, Tallahassee, Florida.

3. A dentist agreeable to all parties obtained from the Florida Bureau of Dental Health, Department of Health and Rehabilitative Services.

4. A sanitarian agreeable to all parties obtained from the Florida Department of Health and Rehabilitative Services.

Doctor Babcock has advised the Court that a liaison officer from the Division of Corrections would be of assistance in coordinating his survey visits to the institutions and in providing source material that would expedite the survey report. The Division of Corrections has selected Mr. James Ball, Deputy Director for Personnel, Division of Corrections, to provide these services. Mr. Ball is agreeable to Doctor Babcock and to the Court to fill this position.

One obstacle to the appointment of this survey team which has now been surmounted is the question of where the funds for paying its members for their services would derive. Doctor Joseph Alderete, prison hospital administrator, and Mr. Mark Thompson, chief medical technical assistant, would presumably remain in the employ of the United States government while on the survey team. Mr. Ball, as liaison officer, the dentist and the sanitarian would presumably remain in the employ of the State of Florida while on the survey team.

On June 13, 1973, the Court received a letter on the subject of funding the survey team from Mr. John P. J. Dussich, Criminal Justice Planner for the Governor's Council on Criminal Justice. The letter reports that $10,000.00 has been allocated by the Governor's Council on Criminal Justice for funding the instant medical services survey. The Governor's Council on Criminal Justice is to be commended for its enlightened and progressive attitude in this regard. Doctor Babcock's fee and expenses, as outlined in his letter to the Court dated February 28, 1973, along with the other miscellaneous expenses of the survey team, should be covered by this fund.

It is intended that the report include a consideration of the *full* spectrum of health care within the Florida state prison system. It should include, but not necessarily be limited to, a comprehensive survey of the general medical, dental, optical, psychiatric, sanitary, dietary, and pharmaceutical services provided the inmates.

It is intended that the survey and report encompass all correctional institutions maintained and operated by the State of Florida (the Court believes there are nine such institutions within the state) and all road camps maintained and operated by the State of

Florida (the Court believes there are 14 such institutions within the state).

Therefore, upon consideration, it is

ORDERED:

1. Doctor Kenneth B. Babcock of Fort Lauderdale, Florida, is hereby appointed to serve in his professional, medical capacity as expert special master of this Court by organizing, directing and conducting a comprehensive survey of the health care services provided by the Florida Division of Corrections to inmates committed to its custody, and to report his findings to the Court.

2. Doctor Joseph Alderete, Medical Director and Chief Medical Officer of the United States Penitentiary, Atlanta, Georgia, is hereby appointed in his professional, medical capacity to serve on Doctor Babcock's survey team and to assist Doctor Babcock in preparing and completing the desired survey and report. ·

3. Mr. Mark Thompson, Hospital Administrative Officer and Chief Medical Technician, Federal Correctional Institution, Tallahassee, Florida, is hereby appointed to serve on Doctor Babcock's survey team and to assist Doctor Babcock in preparing and completing the desired survey and report.

4. The parties are to agree on the name of a dentist obtained from the Florida Bureau of Dental Health, Department of Health and Rehabilitative Services, and to submit his name to the Court within ten (10) days of the date of this order for appointment to the survey team.

5. The parties are to agree on the name of a sanitarian obtained from the Florida Department of Health and Rehabilitative Services, and to submit his name to the Court within ten (10) days of the date of this order for appointment to the survey team.

6. Mr. James Ball, Deputy Director for Personnel, Florida Division of Corrections, is hereby appointed to assist Doctor Babcock in conducting the desired survey by acting as liaison officer between the survey team and the Division of Corrections, and by providing any source material necessary to expedite the completion of the survey and report.

7. The aforesaid survey team is hereby directed to conduct a comprehensive health services survey of all correctional institutions and road camps maintained and operated by the Florida Division of Corrections, and upon completion of said survey to

(A) Report factually, and in full detail, the nature and extent, or lack thereof, of the entire spectrum of health care services presently rendered by the entire Florida Division of Corrections to those inmates committed to its custody, and

(B) To report as a matter of professional, medical expert opinion those remedial measures, if any, which are medically necessary to insure a minimally necessary level, program and system of health care to those inmates committed to the custody of the Florida Division of Corrections.

8. Doctor Babcock and his medical services survey team are directed to act in their professional, medical expert capacity as officers of this Court and to serve solely the Court and the interest of justice. The survey team is further directed to give its best effort, and to serve in a neutral capacity rather than as an agent of any of the parties to this litigation.

9. The tasks of the survey team will be complete when it has submitted a written report to the Court, with copies to counsel for the parties, and when, in the event it be deemed necessary, the members thereof will have completed in-court testimony relating to the report. Such testimony would be subject to cross-examination.

10. The report should properly include a consideration of the *full* spectrum of health care within the Florida state prison system. Thus, it should be based upon a comprehensive survey of the general medical, dental, optical, psy-

chiatric, sanitary, dietary and pharmaceutical services provided the inmates; and it should take into account personnel needs, or lack thereof, as well as needs, or lack thereof, in the physical facilities.

11. Doctor Babcock and the members of the survey team are directed to undertake the conduct of their investigation and to begin preparation of their report to the Court as soon as practicable, and are further directed to render their completed report to the Court as soon as practicable.