**OMNIUM LYONNAIS D'ETANCHEITE ET REVETEMENT ASPHALTE et al., Plaintiffs,**

v.

**The DOW CHEMICAL COMPANY, Defendants.**

**EAGLE STAR INSURANCE COMPANY, LTD., et al., Plaintiffs,**

v.

**The DOW CHEMICAL COMPANY, Defendant.**

Civ. A. Nos. 75–142–AAH, 75–618–AAH.

United States District Court, C. D. California.

Jan. 7, 1977.

---

Robert Yale Libott of Jones & Libott, Los Angeles, Cal., Martin N. Leaf of Leaf, Jurzman, Deull & Drogin, New York City, Robert E. Gooding, Jr. and Stuart R. Pollak of Howard, Prim, Rice, Nemerovski, Canady & Pollak, San Francisco, Cal., William Duane Hall, Los Angeles, Cal., for plaintiffs.

William F. McKenna, Michael D. Berk and I. Bruce Speiser of McKenna & Fitting, Los Angeles, Cal., Warren S. Radler and Bruce D. Drucker of Saperston, Day & Radler, Buffalo, N. Y., Cornelius Pope, Paris, France, for defendant.

## PRETRIAL ORDER NO. 2 AND REFERENCE TO SPECIAL MASTER TO SUPERVISE AND SUPERINTEND DISCOVERY

HAUK, District Judge.

This matter comes before the Court upon the defendant's motions for:

(1) An order abating the action until after discovery has been completed, and

(2) for the appointment of a special Master to superintend and supervise the discovery proceedings;

(3) upon plaintiff's motion to compel production of documents; and

(4) upon defendant's motion for protective order vis-a-vis the production of documents.

The Court has allowed argument in the matter on both sides, has heard all of the argument, has considered all of the points and authorities and pleadings produced and filed in connection with the said motions, now makes its decision.

The above-captioned two cases are companion cases, consolidated for all proceedings herein on December 16, 1975. The plaintiffs are numerous corporations and individuals consisting of insurance companies, contractors and builders and owners of property, all in connection with property located in France. The defendant in each of these cases is The Dow Chemical Company which, it is alleged, supplied defective roofing materials to the aforesaid contractors who, in turn, felt obliged to call upon the insurance companies and the owners for assistance in their endeavor to obtain relief against The Dow Chemical Company.

Long prior to the cases having been filed here on January 15, 1975, the complaint in the first consolidated case, and on February 24, 1975, the complaint in the second consolidated case, all of the plaintiffs had either already or have by now filed their own suits in France, which now involve by French interpleader or otherwise, The Dow Chemical Company, so the Court understands from the papers and the argument, for virtually the same alleged misdeeds by the defendant Dow. As I said at the outset, both of our cases have been consolidated for all purposes since December 16, 1975.

The Court issued its Pretrial Order Number 1 on February 18, 1976, at that time, and temporarily, denying defendant's motion for dismissal, thereupon setting the pretrial conference schedule and providing that the Court would not entertain a further motion for order of dismissal until after the satisfactory completion of pretrial discovery pursuant to a schedule set forth in that Order of February 18, 1976, and a satisfactory stipulated judgment against Dow for the full amount of all compensatory damages as may be awarded by the French courts with respect to the aforesaid claims and lawsuits on behalf of plaintiffs herein, then pending in France for some years before the filing of the actions here in January and February of 1975.

Now, upon consideration of the defendant's two motions, Number 1, to abate any proceedings in the case pending completion of discovery, and for the appointment of a Special Master to superintend and supervise the discovery, and considering the other two motions also, the motion of the plaintiffs for production of documents, and the motion of the defendant for a protective order, the Court now makes the following findings and orders:

## I. ORDER RE ABATEMENT

1. The Court finds that since the actions in France were instituted many months or years before the actions herein were instituted, in January and February, 1975, and in the interest of comity and the orderly and proper progression of litigation which may be filed in two different countries, it is not only in the interest of justice and in the interest of the saving of judicial time, but also under the doctrine of *forum non conveniens* necessary for this Court to defer to the litigation in France, which litigation the Court is informed and therefore finds is that litigation identified in Exhibit "1" attached hereto and incorporated herein as though set forth in full hereat (hereinafter "the French litigation").

The Court finds further that it would be in the interest of justice for all parties that litigation proceed in France.

Therefore, the Court does find and grant abatement of all proceedings herein in these two consolidated cases, except discovery proceedings for the purposes of the litigation in France, including discovery with respect to all of the issues which will be set forth hereinafter as guidelines for the Special Master. This abatement to be effective until the French litigation above-described has been finally determined and terminated, or until earlier order of this Court, if so made upon motion of either one of the parties herein, but at the end of and at the conclusion of all discovery proceedings herein, under the supervision of the Special Master as appointed hereinafter.

2. If the conditions set forth in the Court's Pre-trial Order Number 1 of February 18, 1976, are met, together with the bond that has now been filed herein by the defendant Dow in the amount of $12,000,-000, on December 20, 1976, guaranteeing any and all French judgments that may be rendered pending the duration of the abatement order herein, so that plaintiffs can and do definitely recover in France or here, in this court, the amount that they are adjudged to be entitled to recover in France in terms of American dollars, then the Court will entertain dismissal of the cases herein, unless it finds upon motion and after discovery has been completed, and after a full hearing upon any such motion, that the French courts cannot and may not and in fact shall not award the kind of damages which it is the belief of the plaintiffs that only this Court can award and the French courts cannot award, to wit, so-called punitive or exemplary damages, based upon actual malice as provided by the law in California, which we must necessarily follow here, of course, because this is a diversity case.

## II. ORDER RE APPOINTMENT OF SPECIAL MASTER

The following matters the Court finds as relevant considerations under Federal Rules of Civil Procedure, Rule 53, on the question of appointing a Special Master in these two consolidated cases herein to superintend and to supervise all discovery matters as are empowered to be done under the said Rule 53 and hereinafter:

A. The claims asserted herein by all parties on both sides are essentially the same as those asserted in France and asserted here in the complaint and answer on file herein.

The claims asserted herein by all parties who are plaintiffs here and in France are essentially those asserted in the complaint in the first of the within actions, that is Number CV 75–142, filed on January 15, 1975, and the complaint filed in the second case, Number CV 75–681, filed on February 24, 1975, and the consolidated first amended complaint filed January 22, 1976.

These claims, from all of the papers and pleadings herein, appear to be the same as the claims that are filed in the French litigation.

B. The French litigation was initiated and has been enlarging since at least March 8, 1971. These United States cases have been pending and at issue since the consolidated answer in both cases was filed on March 15, 1976. To this date, despite numerous discovery motions and court hearings and several conferences between counsel and the Court, discovery appears not to have progressed beyond its virtual beginning stages.

C. There remains, in these cases, the major problems of producing and/or copying of documents under Rule 34 on both sides. It appears that plaintiffs seek the production and/or copying of thousands, perhaps hundreds of thousands of blueprints and drawings, research papers and so forth, and contend that defendant has refused to produce them or to have been copied on various grounds, including nonrelevance, trade secrets, government secrecy requirements, et cetera.

On the other hand, the defendant seeks production and/or copying of many documents from the extensive files of the plaintiffs and contends that plaintiffs have failed and refused to produce them or have them copied on various grounds, such as privilege, work product, attorney-client, trade secrets and several other kinds of alleged privileges.

The resolution of these problems may well require the examination of every single document of these hundreds of thousands of documents by a person having both a technical and legal background, particularly a legal background in such things as antitrust matters, so that a Special Master, if appointed with that background, would be able to handle large amounts and large volumes of files efficiently and effectively.

D. Emotions are high and suspicions are rife on both sides. Plaintiffs apparently

believe that somehow the entire roofing industry is participating in some kind of a conspiracy and, on the other hand, the defendant intimates that plaintiffs are engaged in some kind of a conspiracy against it. Each side believes that the other side under the guise of discovery is attempting to avail themselves and itself of the fruits of research, experimentation and knowledge of expert activities of various kinds, such as construction activities, architectural activities, and other matters connected with construction. This intensity of feeling has infected counsel on both sides. All counsel are identifying closely with their clients' respective positions and emotions. Each set of counsel is virtually *persona non grata,* in my view, watching them here as I have repeatedly, to the other side. There have been repeated charges of bad faith made by each set of counsel against the other. Despite pleas by the Court that counsel approach their common problems without emotional involvement and attempt to come to agreement on some of the discovery matters in issue, counsel have been unable to agree on any matter of real substance.

E. It appears to the Court that the cost factor involved in the appointment of a Special Master is substantially outweighed by the benefits to be derived therefrom.

The Court, being duly advised in the premises and having considered the memoranda and points and authorities filed in support of and in opposition to the aforesaid motion appointment of a Special Master, finds that an exceptional condition exists requiring that discovery be held under the supervision and superintendence of a Special Master.

IT IS THEREFORE ORDERED THAT:

1. Victor R. Hansen of 1000 Sunset Boulevard, Second Floor Suite, Los Angeles, California 90012, telephone (213) 629–3171, be and hereby is appointed as Special Master in each of the above-entitled actions consolidated herein.

The Court considers Mr. Hansen to be specially qualified to serve in this capacity for the following reasons:

(a) He is an eminent and respected member of the Los Angeles Bar and was formerly a partner of Hansen & Sweeney and Hansen & Dolle, highly respected and important law firms in this community. He has substantial experience and background in business and corporate legal problems, including antitrust litigation involving myriads—thousands and millions even—of documents.

(b) He is a graduate of Manual Arts High School here in Los Angeles, UCLA, 1925; USC Law School, 1928, and now has, of course, his J.D., his LL.B. having been converted into a J.D., which has been done by most of the law schools, as we know.

He was admitted to practice in California in 1928, the United States Supreme Court, U.S. District Court, Central and Northern Districts, and the United States Court of Appeals for the Ninth Circuit. He has tried cases in all of these courts.

(c) He was appointed Judge of the Superior Court, Los Angeles County, 1950. He was a member of that court until July, 1956 when he was appointed Assistant Attorney General of the United States as Head of the Antitrust Division, Department of Justice, by President Eisenhower.

He served there until he resigned in 1959 to return to private practice in Los Angeles, California, when he became a member of the firm of Hansen & Dolle with general civil practice, including antitrust, condemnation and probate matters. He was a partner of Hansen & Sweeney from 1929 to 1950 when he was appointed a judge.

Hansen & Dolle was dissolved in 1970, and since that time he has been in private practice by himself but serving as counsel, however, to Oliver, Stoever & Laskin, a well-known local law firm.

(d) He served in the military for five years in World War II. He held the office of Adjutant General of the State of California from December, 1944 to 1946, and was a Regent, University of California, 1946 to 1962. He is married, has three children, seven grandchildren, and resides in the La Canada-Flintridge area.

2. The Special Master is empowered and charged with the duty to:

(a) Superintend and schedule all discovery matters, including the taking of depositions, and to decide all questions and disputes with reference thereto, including the power to determine the scope of discovery, to issue protective orders, to determine whether discovery orders have been complied with, and to supervise and order the production and copying of documents and/or records, all in such manner as the Master considers will protect the rights of the parties. He may determine in his discretion to be personally present at any discovery proceedings.

(b) As to the taking of any deposition, the Master may fix the time and place thereof, and he shall have power:

(i) to rule upon the form of any question addressed to a witness;

(ii) to rule in the first instance on any objection to any question made by or on behalf of any party or a witness, and upon upholding any such objection to disallow the question;

(iii) to rule in the first instance that answers to any such questions objected to by any party may be taken subject to such objection and preserved until the admissibility of said testimony is determined by the French Court in the French litigation and by the Court in this action;

(iv) to rule in the first instance upon any objection to any question made on the ground that the answer to such question might cause the disclosure of a confidential communication between attorney and client, or work product, or any other matter allegedly otherwise protected from disclosure;

(v) to rule in the first instance upon all applications made during or in connection with the said depositions under Rules 26, 30, 31, 32 and 34 of the Federal Rules of Civil Procedure;

(vi) to rule in the first instance on the use at the depositions of any matter produced in discovery under Rule 34 or otherwise.

(c) To regulate, pursuant to Rule 53(c), all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties as set forth above; all within the framework of the issues as defined and framed below in this Order.

(d) To require the attendance of counsel for conferences and to put witnesses and/or agents, officers or employees of the parties on oath and to examine them.

(e) To modify or revoke any Court Order heretofore made and entered limiting discovery, or pertaining to, or related to any discovery problem, including scheduling, other than this Order.

The above enumeration of powers is not intended as denying to the Master any power which is not specifically mentioned. To the contrary, the Master shall have, enjoy and exercise all powers allowed to Masters under Rule 53 of the Federal Rules of Civil Procedure and all powers necessary and proper to effectuate Rules 26 through 37, and Rule 45(a)–(d) of the Federal Rules of Civil Procedure (the discovery rules), subject to review as hereinafter provided.

3. Any action taken or ruling made by the Special Master shall be subject to review by this Court upon the application of any party aggrieved by such action or ruling, provided only that such application be made within 15 days after the action or ruling of which complaint is made, unless such time shall have been enlarged by the Master for good cause shown.

(a) The party seeking review shall, at his, her or its own expense, provide to the Court a transcript of the proceedings before the Master, if a court reporter was present thereat, together with a concise statement of the issues and the contentions with respect thereto and points and authorities.

(b) On any matter brought to the Court for review, the Master shall furnish to the Court a statement of the problem and the reasons for his action, which statement may include the legal basis for his action.

(c) When review is sought as to a matter arising in a deposition, the Master may in

**120**

his discretion order completion of the deposition pending review.

4. The Master shall make periodic written reports to the Court at intervals of not less than ninety (90) days with respect to the progress of the matters committed to him under this Order of reference.

5. If one of the parties shall so request, a court reporter shall be present at any proceeding before the Master. Such court reporter shall be engaged by the Master and the expense thereof shall be part of the compensation payable to the Master as hereinafter provided, except for transcripts referred to in Paragraph 3(a) above.

6. The compensation to be allowed the Master for his services shall be fixed by the Court upon motion of the Master and shall be paid from time to time as the Court shall determine. The Master's out-of-pocket expenses, such as expenses for court reporter, travel and subsistence, shall be similarly paid. Within thirty (30) days of the filing of this Order, the plaintiffs in the first case, Number CV 75–142, and the plaintiffs in the second case, Number CV 75–618, shall each deposit, that is, each group of plaintiffs shall deposit, $5,000.00, and defendant Dow shall deposit $10,000.00 for both cases, and the total sum of $20,000.00 shall serve as an initial fund for this purpose. Said deposit shall be made with the Clerk of the Court.

When, in the Master's opinion, the services rendered and expenses incurred are sufficient to substantially utilize, cover or exceed the amount of the said initial deposit, the Master shall advise the Court thereof and the Court will order additional deposit or deposits. As to future deposits, the Court may determine to require them to be made by the parties in other than the fifty-fifty ratio provided above, and the Court will receive and consider any recommendations which the Master may make in that respect.

Regardless of the ratio in which deposits are made, the Court may, at the end of the case, assess the compensation and expenses so allowed to the Master between the parties as the Court shall determine, taxable as costs in the action.

7. Within twenty (20) days of the filing of this Order, each of the parties shall present to the Master a concise statement of the discovery problems and issues now pending and those which they foresee will occur, including a proposed schedule of proceedings.

8. The original of all papers hereafter served and filed herein dealing with discovery matters in each of the above-entitled actions shall be filed with the Clerk of this Court, and a copy thereof shall be furnished to the Master by personal delivery or by mail to his office address, 1000 Sunset Boulevard, Second Floor Suite, Los Angeles, California 90012, no later than the date of the filing of such papers with the Clerk. A copy of any application for review and of any papers or memoranda in support of or in opposition thereto shall similarly be furnished to the Master.

9. As a guide to the Master, it now appears to the Court that the issues to be tried in each of the pending cases are the following, and may easily be determined from the plaintiffs' claims contained in the plaintiffs' original complaint in Case Number CV 75–142, in the original complaint in Case Number CV 75–618, in the consolidated first amended complaint, and in the defendant's consolidated answer.

(1) *Plaintiffs' Claims*

These claims may be briefly put as follows:

(a) Liability of the defendant:
(i) Duty of the defendant.
(ii) Breach of duty, negligent or intentional or fraudulent.
(iii) Causation.
(iv) Injuries.
(v) Damages in terms of French francs and American dollars.
(b) Put more specifically, the plaintiffs' claims can be referenced to the causes of action set forth in the consolidated first amended complaint and they are eight in number:

(i) Strict liability-product liability-law of California;

(ii) Strict liability-law of France.

(iii) Breach of implied warranty of merchantability.

(iv) Breach of implied warranty of fitness.

(v) Breach of express warranties.

(vi) Negligence.

(vii) Fraud.

(viii) Exemplary damages.

The plaintiffs make the same claims with both actions in the original complaints in each case.

(c) Defendant's claims are set forth in the consolidated answer to the said consolidated first amended complaint in Case Number CV 75–618, and to the original complaint in Case Number CV 75–142, which answer was filed March 15, 1976, as follows:

(i) General denial.

(ii) California Statute of Limitations, CCP 337(1), six years.

(iii) California Statute of Limitations, CCP 337.1, four years.

(iv) California Statute of Limitations, CCP 337.15, ten years.

(v) California Statute of Limitations, CCP 338(1)(2)(3), three years.

(vi) California Statute of Limitations, CCP 339(1), two years.

(vii) Punitive damages not allowable under French law.

(viii) Plaintiffs' claims are for declaratory relief, not damages, and suits are in equity, therefore, not at law.

(ix) No trial by jury since equity case.

(x) Contributory negligence.

(xi) Contributory negligence by misuse of materials.

(xii) Assumption of the risk, California law.

(xiii) If trial does not proceed in France the case should be transferred to Eastern District of Michigan under *forum non conveniens.*

(xiv) Failure to state a claim from which relief can be granted.

(d) The above statement of issues is tentative only and without prejudice to the later addition of additional issues found to be present in either case. The Master may, in the first instance, add to, delete from or change this preliminary statement of issues as he shall, from time to time, in his sole discretion, determine.

10. The dates for scheduling of depositions already arrived at and agreed upon by counsel prior to the signing of this Order shall be and remain in full force and effect and the Special Master shall honor these dates.

III. ORDER RE PLAINTIFFS' MOTION FOR PRODUCTION OF DOCUMENTS AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Since the Court has ordered abatement of all proceedings herein until conclusion of discovery proceedings and termination of the French litigation, unless otherwise earlier ordered by the Court, it is further ordered the above two noticed motions, that is, plaintiffs' motion for production of documents and defendant's motion for protective order shall be referred to the Special Master as hereinabove appointed and empowered.

EXHIBIT I to follow.

## EXHIBIT 1

Set forth below is a schedule of the French litigation identified by case name and date commenced (by day, month and year), with cross-referencing to the schedules attached either to the complaint in the first consolidated case (CV 75–142) ("OA") or the complaint in the second consolidated case (CV 75–618) ("A"):

| CASE NAME | DATE COMMENCED | CALIFORNIA SCHEDULE NBR |
|---|---|---|
| ISOCHAPE - PARLY 2 | Q.M. | A 17 |
| SOPREMA-ROQUENCOURT | 08/03/71 | OA 2 |
| SOPREMA - C.G.E. MASSY/ANTONY | 30/08/71 | OA 10 |
| SMAC- SCHILTIGHEIM C.E.T. | 10/08/71 | A-79 |
| SMAC- PONT ST VINCENT C.E.T. | 06/10/71 | A-78 |
| SMAC-TOUL ST EVRE | 06/10/71 | A-84 |
| SMAC - SEDAN FRESNOIS C.E.S. | 06/10/71 | A-80 |
| SMAC - LANGRES | 06/10/71 | A-71 |
| SMAC LE PLACIEUX VILLIERS LES NANCY | 06/08/71 | A-89 |
| SMAC - LAGNIEU C.E.S. | 06/10/71 | A-67 |
| SMAC - ASNIERES LES DIJON | 08/10/73 | A-62 |
| SMAC- GRENOBLE GARE | 10/71 | A-70 |
| SMAC - PONT A POUSSON MAGASINS REUNIS | Q.M. | A-77 |
| S.E.M.P. TIGERY PETIT SENART | 10/12/71 | OA-7 |
| OLETRA - GRENOBLE ST MARTIN D HERES | 11/01/72 | OA-1 |
| SPAPA - NANCY MEDREVILLE | 19/01/72 | OA-61 |
| OLETRA - SAINT ETIENNE | 21/02/72 | OA-6 |
| SOPREMA - MULHOUSE | 19/05/72 | A-4 |
| SMAC - EVRY PETIT BOURG C.E.S. | 16/08/72 | A-69 |
| SOPREMA - DRAVEIL HOPITAL DUPUYTREN | 17/08/72 | A-109 |
| CMA - PLESSIS TREVISE | 19/09/72 | OA-9 |
| SUD ASPHALTE -BOULOGNE CRECHE | 08/12/72 | A-3   124 |
| SMAC - PAU | 12/01/73 | A-76 |
| SMAC-BESANCON CHAMPS PASSERET | 29/01/73 | A-63 |
| SOPREMA-VILLIERS LA MONTAGNE | 01/08/72 | A-14 |
| GERVAIS - DRAVEIL | 10/04/73 | A-54 |
| SOPREMA - ORLEANS LA MOUILLERE | 18/04/73 | A-117 |
| CMA- EAUBONNE | 06/08/73 | A-44 |
| GERVAIS - AUCRANS | 22/03/73 | OA-3 |
| LA CALLENDRITE-DRAGUIGNAN LOUSTALLET | 19/04/74 | A-34 |
| LA CALLENDRITE-BORDEAUX ZUP CENON I | 28/10/74 | A-30 |
| SMAC- MERIGNAC PONT MADAME | 13/06/74 | OA-5 |
| SOPREMA BESANCON CENTRE D AIDE POUR LE TRAVAIL | 09/10/72 | OA-4 |
| SMAC - VILLEFRANCHE /SAONE | 12/09/73 | A-88 |
| SOPREMA -CRAON /LAITERIE/ | 22/06/73 | A-6 |
| SMAC - PANESSIERES C.E.G. | 20/10/72 | A-75 |
| SMAC -TOULOUSE MIRAIL 2 | 28/06/73 | A-85   A-86 |
| FEREM-EYSINES GRAND CAILLOU | 23/07/73 | A-92 |
| CMA VERT LE PETIT | 17/09/73 | A-12 |
| FROMENT-BLANQUEFORT | 01/10/73 | A-50 |
| FEREM- BOUZONVILLE | 05/11/73 | A-91 |
| PATERQ - LAVAUR | 11/05/73 | OA-11 |
| GIRARD -SEES | 03/08/73 | OA-8 |
| SOPREMA - MARMANDE LYCEE | 04/06/73 | A 02 |
| SOPREMA TARBES | 04/09/73 | A-7 |
| LA CALLENDRITE-LORMONT GENICART | 12/12/73 | A-35 |
| LA CALLENDRITE-SABLE/SARTHE CES | 24/01/74 | A-40 |
| SUD ASPHALTE-VERNON RUE DU PARC | 14/01/74 | A-125 |
| LA CALLENDRITE RENNES LANDES DU BREUIL | 07/01/74 | A-39 |
| SOMAPA-MANTES RES. LES ERABLES | 18/03/74 | A-105 |
| BELLEZANE-BROUETTE-TREMBALY LES GONESSE | 14/01/74 | A-22 |
| LA CALLENDRITE-EVREUX C.E.S. | 16/04/74 | A-32 |
| SOPREMA-GRENOBLE ST MARTIN D HERES | 30/04/74 | A-8 |
| LA CALLENDRITE-MERIGNAC LES TOURELLES | 28/05/74 | A-38 |
| SOMAPA-MANTES | 04/06/74 | A-106 |
| FEREM-PONTARLIER | 12/06/74 | A-95 |
| FEREM-LUXUEIL LES BAINS | 12/06/74 | A-94 |
| FEREM-NANCY ZUP DE VANDOEUVRE | 12/06/74 | A-93 |
| SMAC-NANCY ZUP VANDOEUVRE | 18/06/74 | A-87 |

| CASE NAME | DATE COMMENCED | CALIFORNIA SCHEDULE NBR |
|---|---|---|
| SOMEC - LE CHESNAY CENTRE COMMERCIAL PARLY 2 | 03/12/73 | A-102 |
| SOPREMA -METZ BORNY | 27/05/74 | A-15 |
| CMA-PLESSIS ROBINSON-RIPOLI-CHATENAY MALABRY | 18/07/74 | A-58 |
| SOPREMA-AVALLON C.E.S. | 15/07/74 | A-1 |
| OLETRA -GRENOBLE ST MARTIN D HERES | 22/07/74 | A-18 |
| SOPREMA/SMAC- C.E.T. BESANCON | 30/07/74 | A-113 |
| PATERQ-MURET | 20/08/74 | A-13 |
| SMAC-MEYLAN MERLIN GERIN | 21/08/74 | A-73 |
| CMA- BRUNOY C.E.S. | 30/07/74 | A-23 |
| QUIGNON - CHAMBROUSSE LES DAUPHINS | 23/08/74 | A-104 |
| SOPREMA-COURCELLES CHAUSSY | 28/08/74 | A-16 |
| SOPREMA - STRASBOURG CENTRE COMMERCIAL PRIMEVERES | 26/08/74 | A-19 |
| SOPREMA-JARVILLE CITE UNIVERSITAIRE | 03/09/74 | A-5 |
| ISOLACIER NORD -PONT A MARCQ | 19/09/74 | A-98 |
| KELLER -NANTES | 25/09/74 | A-57 |
| GERVAIS-GUERES LES AULNES | 03/10/74 | A-52 |
| ISOLACIER-GRANDE SYNTHE | Q.M. | A-99 |
| SOPREMA - LA TRONCHE | 07/10/74 | A-116 |
| PATEU AND ROBERT-MOUTHE | 09/10/74 | A-10 |
| SOPREMA -FLAINE /HAUTE SAVOIE/ | 09/08/74 | A-21 |
| SOPREMA-STRASBOURG KRONENBOURG | 10/10/74 | A-121 |
| LA CALLENDRITE-FALAISE LYCEE L.LIARD | 16/10/74 | A-33 |
| LA CALLENDRITE-BORDEAUX ZUP DE CENON II | 28/10/74 | A-030 |
| LA CALLENDRITE-BORDEAUX ZUP DE CENON III | 22/10/74 | A-31 |
| SICRA-LE CHESNAY C.E.S. C.PEGUY | 21/11/74 | A-97 |
| PATEU- AND ROBERT -DANNEMARIE/CRETE | 09/10/74 | A-9 |
| SPAPA- ECHIROLLES | 06/12/74 | A-60 |
| KELLER-BELFORT | 06/12/74 | A-55/56 |
| LA CALLENDRITE-BORDEAUX CENON PARC PALMER II | 05/12/74 | A-29 |
| QUIGNON-FEREM-GRAND CAILLOU | Q.M. | A-103 |
| LA CALLENDRITE-MERIGNAC | 30/12/74 | A-37 |
| COUTANT-LA ROCHE/YON | 7/01/75 | A-49 |
| MOUSSU-VILLENAVE D ORNON /PONT DE LA MAYE | 05/12/74 | A-20 |
| SOPREMA-BIESHEIM PAR NEUF BRISACH | 31/10/74 | A-11 |
| SOPREMA-MONT DE MARSAN | 31/12/74 | A-115 |
| SMAC-KERGADALEN | 21/02/75 | A-82 |
| SMAC-EVRY /PREF. ESSONE/ | 21/02/75 | A-68 |
| CMA- VALENTON | 11/02/75 | A-47 |
| CMA- MONTFERMEIL | 14/02/75 | A-46 |
| CMA- MONTARGIS EGLISE NOTRE DAME | 20/03/75 | A-45 |
| S.G.E.- IVRY STE FRANCAISE DE DISTRIBUTION | 20/03/75 | A-96 |
| LA CALLENDRITE-BRETIGNY-ORGE LYCEE TECH. | 25/03/75 | A-28 |
| SMAC-MOURMELON LE GRAND C.E.G. | 08/04/75 | A-74 |
| LA CALLENDRITE-BAYONNE ZUP STE CROIX | 07/07/75 | A-24 |
| PATERCQ-TOULOUSE CLINIQUE DU PARC | 18/04/75 | A-59 |
| CMA-AULNAY S/BOIS AULNAY 3000 | 24/04/75 | A-42 |
| SOPREMA-TOULOUSE AVENUE FRIZAC | 16/05/75 | A-123 |
| SOPREMA - LA ROCHE /YON | 21/05/75 | A-111 |
| SOPREMA-CORNEBARIEU /HAUTE GARONNE/ | 14/05/75 | A-114 |
| SOPREMA-STRASBOURG BANQUE FEDERATIVE DU CREDIT | 30/05/75 | A-119 |
| CMA - CORBEIL F.F.F. | 27/06/75 | A-43 |
| SOPREMA- BELLEGARDE /MONOPRIX/ | 17/07/75 | A-107 |
| CMA- VILLENEUVE LA GARENNE /RUE GASTON APERT/ | 28/07/75 | A-48 |
| SOPREMA- BRIVE LA GAILLARDE | 02/06/75 | A-108 |
| SMAC-CARCASSONE | 08/08/75 | A-65 |
| FEREM/RUBEROID -MONS EN BAREUIL RES.EUROPE | 23/05/75 | A-90 |
| SMAC-MERIGNAC AVENUE DE LA LIBERATION | 26/05/75 | A-72 |
| SOPREMA-STRASBOURG ELSAU | 24/05/75 | A-120 |
| ISOLACIER-NOGENT/OISE | 01/09/75 | A-100 |
| SUD ASPHALTE-BOULOGNE CRECHE MUNICIPALE | 24/04/75 | A-03  124 |
| SOPREMA/LA CALLENDRITE-CHATENAY MALABRY ECOLE CENTRALE | 06/10/75 | A-110 |
| ISOLACIER-VALENCIENNES LES CIGOGNES | 17/10/74 | A-101 |
| SMAC-BORDEAUX ST AUGUSTIN | 31/10/75 | A-64 |
| CALLENDRITE-BELLEFONTAINE | 28/06/76 | A-41 |