**OWENS–CORNING FIBERGLAS CORPORATION, Relator,**

v.

**The Honorable Neil CALDWELL, Judge of the 23rd District Court of Brazoria County, Texas, Respondent.**

No. 01–91–00770–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 24, 1991.

Frank M. Bean, Carolyn Marks Johnson, for relator.

Kevin F. Risely, W. James Kronzer, Bob Ballard, Lawrence Madeksho, Houston, for respondent.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

Owens–Corning Fiberglas Corporation (OCF) seeks mandamus relief, asking this Court to vacate Judge Neil Caldwell's December 13, 1990, order appointing a master in the underlying litigation.[1] OCF argues that the underlying litigation is not an exceptional case and that the appointment is blanket and unlimited, in violation of TEX. R.CIV.P. 171 and the recent decision of the supreme court in *Simpson v. Canales*, 806 S.W.2d 802 (Tex.1991).[2] Judge Caldwell contends: (1) relator did not preserve error because it did not first seek relief from the trial court; (2) relator did not timely object to the appointment of the master; (3) mandamus is precluded because resolution of disputed fact issues is a precondition to the relief relator requests; (4) the order is supported by sufficient evidence and is unchal-

lenged; and (5) no grounds exist to remove the master.

By telecopy transmission on December 7, 1990, the soon-to-be-appointed master advised the attorneys for all parties in the underlying litigation, including OCF, that she would be appointed as master in chancery under rule 171 the following week. A copy of the proposed order was also transmitted. The proposed order and the final order of December 13 are identical.

The final order recites that the court appointed a master "after reviewing and considering the numerous parties in this Cause, the expected complexity and duplication in pleadings and motions, the complexity of the factual and legal issues raised by the pleadings filed by the parties ... and considering the time and expense that personal management of these matters would impose on the Court...." The court also found that the underlying litigation "is a controversy of substantial complexity in which the increased expense of proceedings before a Master will result in offsetting benefits to the parties and the State through a reduction in the complexities of trial, and ... is an exceptional case...."

The documents provided to us do not show when in 1990 the underlying cause was filed, whether counsel for the parties received from the clerk a copy of the final order appointing the master (as required by the order), or what the extent of discovery proceedings was before the appointment of the master. However, the documents do indicate the parties were filing interrogatories, requests for admissions, motions to compel, requests for production, and responses to interrogatories and requests between December 13, 1990, and July 31, 1991. The cover letters of relator's counsel and plaintiffs' counsel accompanying the filings show the master receiving copies.

OCF made no objection to the appointment of the master until August 22, 1991. On that date, OCF also moved for continuance of the scheduled August 29, 1991,

---

1. *Clifton E. DeMude, Jr., et al. v. Owens–Corning Fiberglas Corporation*, No. 90–C–1252 (Dist.Ct. of Brazoria County, 23rd Dist. of Texas).

2. The opinion issued on April 3, 1991.

hearing[3] before the master, citing among other reasons that the court should have a chance to rule upon its objection to the master's appointment. On August 28, 1991, OCF moved to stay the August 29, hearing so that it could pursue its remedy of mandamus. To date, Judge Caldwell has not ruled on the motions. OCF filed its motion for leave to file a petition for writ of mandamus on August 28. OCF did not participate in any proceedings before the master until August 29. At that hearing, OCF reurged its motion for continuance. The master responded that Judge Caldwell had said the hearing should be held unless this Court issued a stay. That same day, this Court stayed any further proceedings before the master.

■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).

■ We first address the argument that OCF should be denied mandamus relief because it failed to seek relief from the trial court. Mandamus will not issue to compel a public official to do what he or she has not been requested to do. *Durant v. Stone,* 97 S.W.2d 1006, 1009 (Tex.Civ. App.—Galveston 1936, orig. proceeding). OCF sought relief from Judge Caldwell by filing objections to the appointment of the master and by moving for a continuance of the August 29, hearing before the master until the judge could consider and rule on the objections. Judge Caldwell has not ruled on the objections, and the August 29, hearing went forward. We find that OCF has made a sufficient request of Judge Caldwell. *See, e.g., City of Houston v. Houston Chronicle Publishing Co.,* 673 S.W.2d 316, 319–20 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding) (mandamus authorized under Open Records Act after a refusal to supply information; city's failure to comply with a request for information, to make a reasonable offer to comply, or to certify a definite time when it

would comply constituted a refusal to supply information).

We next address the contention that OCF did not timely object to the appointment of a master. Rule 171 does not specify a time by which the parties must object to the appointment of a master or to the master's report. We have found no Texas case law on acquiescence to the appointment of a master or on waiver of the right to object to a master's appointment. Because the supreme court in *Simpson* noted that rule 171 is similar in language and purpose to FED.R.CIV.P. 53, we have reviewed federal cases discussing the timeliness of objections to the appointment of a master.

■ In federal court, a party must object to the appointment of a special master at the time of the appointment or within a reasonable time thereafter, or the party's objection is waived. *Burlington Northern R.R. v. Washington Dep't of Revenue,* 934 F.2d 1064, 1069 (9th Cir.1991); *see Cruz v. Hauck,* 515 F.2d 322, 331 (5th Cir.1975) (if unfeasible to object prior to or at time of reference, objection should be made at earliest opportunity), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). The right to object is waived when it is raised for the first time on appeal. *Burlington Northern R.R.,* 934 F.2d at 1069; *Cruz,* 515 F.2d at 331. Several circuits have held that the right to object is waived once the master delivers the final report. *Burlington Northern R.R.,* 934 F.2d at 1069; *see Piper v. Hauck,* 532 F.2d 1016, 1018 (5th Cir.1976); *Cruz,* 515 F.2d at 331.

We have found no cases that define what constitutes a reasonable time in which to object, the earliest opportunity to object, or promptness in objecting to the appointment of a master. However, *First Iowa Hydro Electric Cooperative v. Iowa–Illinois Gas & Electric Co.,* 245 F.2d 613, 627 (8th Cir.), *cert. denied,* 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), provides some guidance. There, the Eighth Circuit rejected some parties' attack on the appointment of a master. The master was appointed in Sep-

---

**3.** This was a hearing on plaintiffs' motions to compel answers to their first set of interrogatories and production of documents under their fifth request.

tember 1955, and the parties objected to the appointment in January 1956. *Id.* at 625, 627. The court held there was no error in the trial judge's conclusion that the discovery issues were complicated and the case was exceptional as required by FED. R.CIV.P. 53. *Id.* at 626. The court also found that, unlike the situation in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the master would be presiding over an early stage of discovery, not the trial itself. *Id.* at 625. Then the court noted:

> Although the plaintiffs entered objections to the appointment of Master Doerr when they appeared before him on certain occasions, they did not present such an objection to Judge Riley until January 19th, 1956. Long before they filed the motion ... the master had held numerous hearings and entered numerous orders and plaintiffs had frequently invoked his jurisdiction.
>
> ....
>
> Under the circumstances, Judge Riley's ruling that plaintiffs waived any error that may have been committed in the appointment of Master Doerr was not erroneous. Failure to make timely objection to the appointment of a Master either at the time of the order or promptly thereafter constitutes a waiver of error and objections made only to the Master are unavailing.

245 F.2d at 627, 628.

In *United States v. Conservation Chemical Co.*, 106 F.R.D. 210, 214 (W.D.Mo. 1985), nine months after the master's appointment and on the eve of the injunctive relief hearing before the master, several parties sought to revoke the master's authority, arguing that exceptional circumstances did not exist under FED.R.CIV.P. 53 and that they were deprived of their right to trial by a judge sitting pursuant to U.S. CONST. art. III. In addressing the timeliness of the revocation motion, the court noted the parties, the court, and the master had relied on the longstanding grant of authority to the master to hear certain issues. 106 F.R.D. at 230. The master had received a leave of absence from his teaching position; the court had set its civil and criminal dockets; extensive timetables had been established for motion practice before the master; and it was established that the master would hold continuous hearings. *Id.* at 229–30. The court concluded that the motion should be denied in light of all the circumstances. *Id.* at 228.

▮ From *First Iowa* and *Conservation Chemical*, we conclude that a party objecting to a master's appointment must make an objection not within some arbitrary time period, but before it has taken part in proceedings before the master or before the parties, the master, and the court have acted in reliance on the master's appointment.

▮ We also compare a party's failure to object to the appointment of a master with a party's failure to object to the master's report. If no proper objection is filed to the report *before its adoption by the court*, the report becomes conclusive on the issues considered by the master. *Novotny v. Novotny*, 665 S.W.2d 171, 173 (Tex. App.—Houston [1st Dist.] 1984, writ dism'd w.o.j.). Therefore, we conclude that a party's objection to the master's appointment is timely if filed *before the party participates in proceedings before the master*. Although OCF knew or should have known of the appointment of a master and sent the master copies of documents related to discovery, OCF did not appear in proceedings before the master until August 29, after it had filed its objection to the appointment. Therefore, OCF did not waive its right to object to the appointment of the master on August 22.

Thirdly, we consider Judge Caldwell's argument that various disputed issues of fact preclude OCF's entitlement to mandamus relief. He lists these fact issues as: (1) whether receipt of copies of cover letters and filings by OCF's counsel constituted notice of the appointment of a master; (2) whether the sending of documents to the master by OCF's counsel constituted knowledge of the master's appointment or consent to the appointment; and (3) whether failure to object to the appointment of the master for an eight-month period con-

stituted effective consent. All of these fact issues relate to the timeliness of OCF''s objection to the master's appointment.

It is undisputed that the master was appointed on December 13, 1990. It is undisputed that OCF filed an objection to the appointment of the master on August 22, 1991. It is undisputed that OCF participated in proceedings before the master for the first time on August 29, 1991. These undisputed facts are the only ones necessary to our determination that OCF timely objected to the appointment of the master and did not waive its right to object. The disputed facts highlighted by Judge Caldwell are irrelevant to our determination.

Next, we review Judge Caldwell's December 13, 1990, order in light of *Simpson*. The order is unspecific. It speaks of using the services of a special master "in facilitating and moving forward on the development of the issues and discovery necessary in this case, including but not limited to discovery hearings, attendance at depositions and review of documents...." It vests the master with the authority (1) to do all acts necessary to the efficient performance of her duties, (2) to receive and report evidence and to rule on its admissibility, (3) to fix the time and place for hearings, (4) to regulate hearing procedures before her, (5) to require the production before her of evidence upon all matters pertaining to the case, (6) to put witnesses under oath and to examine them, and (7) at the request of a party, to make a record of evidence offered or excluded in the same manner as provided for a court sitting in the trial of a case. The order is a "blanket" order, designed to allow the trial court to refer all discovery matters to the master. It is also blanket authority to allow a master to "require" a party to produce evidence irrespective of whether an opposing party has made a request; therefore, it allows the master to become an "advocate" in a proceeding, not merely a "referee" in the proceeding.

In *Simpson*, an original proceeding decided after the blanket order in this proceeding was entered, the supreme court stated that *even if a case were an excep-tional one* considering the pleadings, number of parties, or activity it generated, it would be reluctant to approve the trial court's delegation of all discovery to a master. 806 S.W.2d at 812. We recognize several differences between the underlying litigation and *Simpson*: all parties in *Simpson* objected to the appointment of the master; the *Simpson* master required a $10,000 deposit to cover his fees in advance. These facts do not distinguish *Simpson*. The plaintiffs in *Simpson* sued 18 defendants, alleging that the death of Mr. Simpson from lung cancer was caused by exposure to various toxic chemicals designed, manufactured, or marketed by the defendants. 806 S.W.2d at 803. Numerous discovery motions were filed in *Simpson*, and eight hearings were held on the motions. *Id.* The supreme court noted:

> While the case is undoubtedly more complicated than many other cases on the trial court's docket, it can hardly be said to be exceptional, at least at this point in its development. We know from our vantage point that such cases are not uncommon among the trial courts of this state.
>
> . . . .
>
> We are not unmindful of the heavy burden upon the limited time and resources of our trial courts, nor are we unsympathetic. Under Rule 171, however, masters cannot be appointed except "in exceptional cases for good cause". The record before us shows that this case ·is not exceptional, and that there is not good cause to refer all discovery matters to a master.

The record before us indicates that the underlying litigation involves five defendants. The record also shows that prior to the filing of this proceeding, two requests for production were made to defendant Armstrong World Industries; one set of requests for admissions was made to OCF; five requests for production were made to OCF; one set of interrogatories was served on all defendants; and two motions to compel were the subject of two hearings before the master. We conclude that if *Simpson*

was not an exceptional case justifying a blanket order of discovery, neither is the underlying litigation. Given our conclusion, it is unnecessary for us to consider whether grounds exist to remove the master.

Judge Caldwell asserts that if we apply *Simpson* to this proceeding, we must first find *Simpson* "retroactive." We assume this is a reference to the general proposition that Texas law militates strongly against the retroactive application of laws. *Houston Indep. School Dist. v. Houston Chronicle Publishing Co.*, 798 S.W.2d 580, 585 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

We have previously held that, as a general rule, in the absence of an expressed intention to the contrary, procedural rules adopted by the supreme court are applied to pending litigation in that subsequent steps in the case are controlled by the new rule. *Cavitt v. Jetton's Greenway Plaza Cafeteria*, 563 S.W.2d 319, 321 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ). However, rule 171 is not a new rule. The supreme court's decision in *Simpson* represents an interpretation of an existing rule. We note that the supreme court had no difficulty in "retroactively" applying its decision in *Simpson* to the facts of that case. In *Braden v. Downey*, 811 S.W.2d 922, 930 (Tex.1991), the supreme court applied its "new" sanctions procedures under TEX. R.CIV.P. 215 to the facts of that case.

In applying the strictures of the supreme court in *Simpson*, we conclude that Judge Caldwell abused his discretion in entering his blanket order appointing a master. We also conclude that to require relator to reserve its complaint for appeal would deny it any effective relief from the trial court's order. *See Simpson*, 806 S.W.2d at 812.

Accordingly, we direct Judge Caldwell to vacate his blanket order of December 13, 1990, appointing a master. We are confident that Judge Caldwell will act in accordance with this opinion. The writ will issue only in the event he fails to comply.