**TRANSAMERICAN NATURAL GAS CORPORATION, Relator,**

v.

**The Honorable Fernando G. MANCIAS, Presiding Judge of the 93rd Judicial District Court, Hidalgo County, Texas, Respondent.**

**No. 13–94–159–CV.**

Court of Appeals of Texas, Corpus Christi.

May 26, 1994.

Thomas Fulkerson, Clements, O'Neill, & Pierce, Houston, Jose E. Garcia, Garcia & Ramirez, McAllen, Max Hendrick, III, Vinson & Elkins, Houston, Francisco J. Rodriguez, Rodriguez, Prunedo, Abrego, Tovar & Garza, Reynaldo Ortiz, Ortiz & Garcia, McAllen, Charles Cheek, C. Robert Vote, Berry D. Bowen, Enron Corporation, Houston, Roberto L. Ramirez, Law Office of Jose E. Garcia, McAllen, Jack O'Neill, Michael D. Kirby, Clements, O'Neill, Pierce & Nickens, Houston, Gary E. Ellison, Ellison, Schweinle & Parish, Houston, for intervenor.

Craig S. Smith, Smith & Edwards, Corpus Christi, Cynthia Hollingsworth, John C. Nabors, Richard E. Miller, Gardere & Wynne, Dallas, Michael Jones, Houston, Donald B. Edwards, Corpus Christi, for relator.

Before GILBERTO HINOJOSA, FEDERICO G. HINOJOSA and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

In the present mandamus proceeding, TransAmerican Natural Gas Corporation requests this court to order the trial court to vacate an order appointing a special master and providing for his powers and compensation, and to require the trial court to grant TransAmerican's motion to compel the production of documents. We conditionally grant the writ in part, and deny mandamus relief in part.

In the underlying proceeding, TransAmerican sued Enron Corporation and Enron Oil & Gas Company, the real parties in interest, for numerous causes of action involving misappropriation of trade secrets and interference with business relationships.

TransAmerican, which is in the business of producing and selling natural gas, competes with Enron in Webb and Zapata Counties. While in financial difficulties following a bankruptcy reorganization in the mid–1980s, TransAmerican considered among its alternatives the sale of certain of its production and exploration properties. TransAmerican established a "data room" for prospective purchasers to visit showing otherwise confidential financial and geological information concerning its oil and gas leases in Webb and Zapata Counties, as well as evaluations of potentially productive areas in the vicinity but not under lease. Access to the data room was restricted to TransAmerican employees and those prospective purchasers that had executed a written agreement to keep any such information confidential. As one of the prospective purchasers, Enron visited the data room at various times from 1989 to 1992, and signed the confidentiality agreement.

In the underlying lawsuit, TransAmerican has alleged that, subsequent to visiting the data room, Enron used confidential information to compete against it unfairly in the acquisition of new leases in Webb and Zapata Counties. Specifically, Enron has obtained leases on properties identified as the De-Spain acreage, the Mayers/Sanditen acreage, and the Briscoe Ranch, allegedly based on confidential information stolen from Trans-American.

Accordingly, TransAmerican sought to compel the production of geological maps which reveal Enron's operational activities in Webb and Zapata Counties, and which allegedly relied upon the stolen information. Enron opposed the discovery requests on the grounds that they were overbroad and burdensome, and that the documents requested were confidential and privileged from discovery as proprietary information.

The trial court held a hearing on Trans-American's motion to compel. Finding good cause to appoint a "geological technical advisor/Special Master" based generally on the volume of maps and materials involved and the technical geological issues raised with regard to those maps and materials, the trial court's March 11, 1994, Amended Order provides in pertinent part as follows:

ORDERED, that documents responsive to the noted requests shall be submitted *in camera* to a Special Master as more fully set forth herein; it is further

ORDERED, that Dan Balsinger shall be appointed by this Court as a Special Master pursuant to Tex.R.Civ.P. 171 to assist the Court in answering the following questions:

a. Do the geological, land or other maps present in Enron Oil and Gas Company's Corpus Christi Division Office contain information that is traceable solely to the TransAmerican Natural Gas Corporation 1989, 1990 and 1991 data rooms?

b. Has Enron Oil and Gas Company produced in this case all of the maps which are geologically relevant to its decision to take the "Mayers," "Briscoe" and/or "DeSpain" leases?

It is further

ORDERED, that the Master shall prepare a written report answering the two questions propounded to him by this Order and detailing the reasons for his conclusions, a copy of which report shall be designated confidential and be distributed by the Master to all parties herein; it is further

ORDERED, that the Plaintiff Trans-American Natural Gas Corporation and the Defendant Enron Oil & Gas Company shall bear the expenses and fees of the Master equally, and that each shall tender to the Registry of the Court the sum of $10,000 as an initial retainer for the Master on or before March 10, 1994. The Master shall invoice the Court directly for services provided on a monthly basis. These fees shall be considered costs of court. It is further

ORDERED, that after the conclusion of his work, the Master may be deposed for the purpose of discovery, or be called to the trial of this cause by either party. It is finally

ORDERED that, except as granted herein, the Plaintiff's motion to compel on the specific items listed previously in this Order is DENIED pending the determinations of the Master.

In the present mandamus proceeding, TransAmerican contends that this order is an abuse of discretion on a number of grounds. TransAmerican initially argues that there is no exceptional circumstance that would justify the appointment of a special master in the present case.

■ The appointment of a master lies within the sound discretion of the trial court and should not be reversed except for a clear abuse of that discretion. *Simpson v. Canales,* 806 S.W.2d 802, 811 (Tex.1991); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 510 (Tex.1980); *Mann v. Mann,* 607 S.W.2d 243, 246 (Tex.1980). However, the improper appointment of a master is a proper subject for mandamus relief, since to require the parties to reserve their complaint for appeal would be to deny them any effective relief from the trial court's order. *Simpson,* 806 S.W.2d at 812.

Texas Rule of Civil Procedure 171 permits appointment of a master only "in exceptional cases, for good cause". Because the source of this requirement is Federal Rule of Civil Procedure 53, we analogize it to the Rule 53(b) requirement for a showing of some "exceptional condition" as a prerequisite to the appointment of a master. *Simpson,* 806 S.W.2d at 811; *see also La Buy v. Howes Leather Co.,* 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957).

■ This "exceptional condition" requirement cannot be met merely by showing that a case is complicated or time-consuming, or that the court is busy. *See La Buy,* 352 U.S. at 259, 77 S.Ct. at 315; *Simpson,* 806 S.W.2d at 811; *Owens–Corning Fiberglas Corp. v. Caldwell,* 830 S.W.2d 622, 626 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). Specifically, both state and federal courts have determined that the mere complexity of issues in a case may not be considered an exceptional condition, or the very cases which most need the attention of an experienced trial judge would always be referred to masters. *La Buy,* 352 U.S. at 259, 77 S.Ct. at 315; *Simpson,* 806 S.W.2d at 808.

■ However, the federal courts have repeatedly condoned the appointment of masters to conduct comprehensive analyses of highly technical data. *See United States v. Conservation Chemical Co.,* 106 F.R.D. 210, 219 (W.D.Mo.1985); *Costello v. Wainwright,* 387 F.Supp. 324, 325 (M.D.Fla.1973). The need for technical expertise thus may be considered in determining whether exceptional circumstances exist to justify the appointment of a master. *See Lelsz v. Kavanagh,* 112 F.R.D. 367 (N.D.Tex.1986). Specifically, discovery questions which require extensive examination of highly technical and complex documents by a person having both a technical and a legal background may constitute an exceptional condition sufficient to justify the appointment of a special master to supervise such discovery. *See United States v. International Business Machines Corp.,* 76 F.R.D. 97, 98 (S.D.N.Y.1977); *Omnium Lyonnais D'Etancheite et Revetement Asphalte v. Dow Chemical Co.,* 73 F.R.D. 114, 117 (C.D.Cal.1977).

We see no reason why the same considerations should not be weighed in favor of appointing a special master under Texas Rule 171. Moreover, the Texas Supreme Court in *Chapa v. Garcia,* 848 S.W.2d 667 (Tex.1992), has suggested that it may be appropriate in certain cases for the trial judge to appoint a special master to assist him to review *in camera* technical documents over which the master has some degree of expertise, in order for the trial court to determine questions of privilege and discoverability. *Id.* at 668.

■ We hold that the technical nature of the present case and the potential help which may be provided to the trial court by a special master with geological training and expertise constitutes a sufficiently exceptional condition to justify the present appointment. However, although it is proper for a master to be appointed to *assist* the trial judge in reviewing the documents in question, it remains the duty of the trial judge himself to review the documents and make the ultimate determination concerning their discoverability.

TransAmerican further complains of that portion of the present order which states that the master may be deposed or called as a witness at trial, thus making him the equivalent of a judicially-appointed and exclusive expert witness concerning the documents in question.

■ It is clearly improper for such an order to cast the master in the role of advocate rather than merely referee in the underlying proceeding. *See Owens–Corning,* 830 S.W.2d at 626 (allowing master to require production of evidence regardless of whether the opposing party has made a request). There is simply no authorization in the law for the master to take an adversary position at the trial before the court, which would place him outside the role of a master in chancery. Thus, the master is not an appropriate witness at trial. *Martin v. Martin,* 797 S.W.2d 347, 352 (Tex.App.—Texarkana 1990, no writ). We agree that the trial court abused its discretion in purporting to make the master available for deposition or trial testimony in the present case.

TransAmerican further argues that the present order amounts to an improper denial of its motion to compel production. The present order states that TransAmerican's motion is "DENIED pending the determinations of the Master." In *Jampole v. Touchy*, 673 S.W.2d 569, 574 (Tex.1984), the Texas Supreme Court held that, absent some indication that the trial court was reserving or postponing judgment, mandamus relief is generally available to review the trial court's order denying discovery, even though the trial court retains the ability to reconsider that ruling. Unlike *Jampole*, in the present case, the trial court did effectively reserve judgment by making its denial of discovery contingent upon subsequent determinations by the master. *See Enserch Corp. v. Crowley*, 800 S.W.2d 685 (Tex.App.—Fort Worth 1990, orig. proceeding). We stress that, although the master may assist the trial judge in this task, it is ultimately the trial judge's duty to review the documents and make his own determination concerning their discoverability. Thus, we hold that mandamus relief would be premature with regard to the present denial of discovery.

Finally, TransAmerican complains that the trial court's requirement that it pay $10,000 into the registry of court for the master's fees amounts to an improper assessment of anticipated costs. We agree.

Texas Rule of Civil Procedure 171 provides that "[t]he court shall award reasonable compensation to such master to be taxed as costs of suit." *See Houston I.S.D. v. Houston Chronicle Publishing Co.*, 798 S.W.2d 580, 590 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The awarding or refusing of the master's fee is within the sound discretion of the trial court and is not reviewable absent an abuse of discretion clearly apparent from the record. *Martin*, 797 S.W.2d at 352.

However, the only basis for requiring a party to give security for costs before final judgment is Texas Rule of Civil Procedure 143, which provides that "[a] party seeking affirmative relief may be ruled to give security for costs at any time before final judgment, upon motion of any party, or any officer of the court interested in the costs accruing in such suit, or by the court

upon its own motion." *See Smith v. White*, 695 S.W.2d 295, 297 (Tex.App.—Houston [1st Dist.] 1985, orig. proceeding). Rule 143 generally allows the trial court to require a party to post security for costs that have already accrued, but not to fix a specific amount for anticipated costs which a party is required to pay or post security for prematurely. *Johnson v. Smith*, 857 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding); *Mosher v. Tunnell*, 400 S.W.2d 402 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). An order improperly requiring a fixed amount of security prior to the final judgment, moreover, is an abuse of discretion subject to being set aside by mandamus. *See Johnson*, 857 S.W.2d at 615–16.

Accordingly, we conditionally grant a writ of mandamus directing the trial court to vacate those portions of its order purporting to make the master available for deposition and examination at trial, and requiring the payment of $10,000 into the registry of the court as an initial retainer for the master's services. However, the writ will issue only if the trial court fails to comply with the opinion of this Court. We deny mandamus relief concerning those portions of the order appointing the master and temporarily denying discovery.