Robert J. TOLLETT, et ux, Patricia Tollett, Relators

v.

The Honorable Frank T. CARMONA, Judge, 122nd Judicial District, Galveston County, Texas, Respondent.

No. 14–95–01196–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 21, 1995.

Kenneth C. Kaye, League City, for appellants.

Charles A. Daughtry, Houston, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

**OPINION**

EDELMAN, Justice.

Relators seek a mandamus on the grounds that the trial court abused its discretion in appointing a master in this case. We conditionally grant the writ.

In 1990, relators sued the real party in interest, The Wharf at Clear Lake Maintenance Association, for damages allegedly caused to the foundation of relators' residence by a bulkhead failure. Judge Henry G. Dalehite presided over this case as Judge of the 122nd District Court until his retirement on December 31, 1994. Respondent, Judge Frank T. Carmona, then succeeded

Judge Dalehite as Judge of the 122nd District Court.

On April 18, 1995, this case was set for trial on October 23, 1995. On April 25, Judge Carmona appointed Judge Dalehite as visiting judge in this case. Relators objected to this appointment on May 24,[1] and Judge Dalehite did not act as visiting judge.

At a hearing on August 30, Judge Carmona announced either that he *might* appoint a master or *would* appoint a master,[2] without specifying whom, to which neither party objected. On September 27, Judge Carmona sua sponte appointed Judge Dalehite as master for discovery in this case with costs to be split between the parties. That same day, the court's trial coordinator advised relators of this appointment by phone.

A hearing on various discovery matters was thereafter set on October 6, then reset by agreement to October 12.[3] On October 11, relators filed a motion to reconsider the appointment of Judge Dalehite as master. This motion asserted, among other things, that the requirements of Texas Rule of Civil Procedure 171 for appointment of a master had not been satisfied.[4] At a hearing that day, the trial court denied this motion.

On October 12, relator filed a motion for leave to file petition for writ of mandamus in this Court. *See* TEX.GOV'T CODE ANN. § 22.221 (Vernon 1988). We granted leave and stayed the appointment of Judge Dalehite as master until final decision of this court on relator's petition for writ of mandamus.

Relators claim that the appointment of Judge Dalehite was improper because (1) it did not meet the requirements of Texas Rule of Civil Procedure 171, and (2) the appointment of Judge Dalehite as master, in effect, "side-stepped" their objection to him as a visiting judge. In the alternative, relators

---

1. *See* TEX.GOV'T CODE ANN. § 74.053 (Vernon Supp. 1995).

2. The parties differ as to what Judge Carmona stated in this regard, and it is not reflected in an order, docket entry or otherwise in the record.

3. It is not indicated in the record when relators learned that Judge Dalehite would preside over

this hearing, although this might have been apparent from the circumstances when they were informed on October 4 of the October 6 hearing.

4. Although designated as a motion to reconsider, it was, in substance, an objection to the appointment. *See* TEX.R.CIV.P. 171.

contend that if the appointment was proper, the master's fees should be taxed as costs.

The real party in interest asserts that mandamus should be denied because (1) relators were guilty of laches in delaying to object to the appointment of the master, (2) relators actually objected only to Judge Dalehite, not to the appointment of a master generally, and Rule 171 does not provide for objection to the person appointed as master, and (3) assessing the cost of the master's fees can be remedied on appeal.

The appointment of a master lies within the sound discretion of the trial court and should not be reversed except for a clear abuse of that discretion. *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex.1991). As demonstrated by *Simpson*, the appointment of a master is reviewable by mandamus.

Trial courts may appoint masters only "in exceptional cases, for good cause." TEX. R.CIV.P. 171. In *Simpson* after reviewing the legal history concerning appointment of masters, the Texas Supreme Court stated that "[c]enturies of experience counsel against the use of masters except in limited circumstances. We therefore conclude that every referral to a master, unless authorized by statute or consented to by the parties,[5] must comply with Rule 171." 806 S.W.2d at 810. Rule 171 is not satisfied merely by showing that a case is "complicated or time-consuming or that the court is busy." *Id.* at 811.

*Simpson* was a toxic tort case involving one plaintiff and eighteen defendants. *Id.* Although eight discovery motions had been filed in the first ten months of the case, none were especially complex, and the trial court had not heard any of them before appointing a master. *Id.* Moreover, although the case was undoubtedly more complicated than many on the trial court's docket, it was not exceptional or even uncommon among the trial courts of the state. *Id.*

Even if the case had been exceptional, a blanket delegation of *all* discovery in a case to a master is much more difficult to justify than reference of a single issue, and would be warranted only in a *truly* exceptional case. *Id.* at 811–12. Absent a showing that future discovery would justify supervision by a master rather than the court, the parties in *Simpson* had been ordered to pay for resolution of issues by a master that litigants in other cases could obtain from the court without such expense. *Id.* at 812. Therefore, finding that the case was not exceptional and that good cause was not shown, the Texas Supreme Court held that the trial court abused its discretion in referring all discovery matters to a master, and granted the writ of mandamus. *Id.* at 812; *see also Academy of Model Aeronautics, Inc. v. Packer*, 860 S.W.2d 419 (Tex.1993).

The present case is even less complicated than *Simpson*. It involves two plaintiffs, who are husband and wife, and one defendant. Relators sued the defendant for damage allegedly caused to the foundation of their residence by a bulkhead failure. There are six pending discovery motions. Neither party argues that the case or the discovery motions are especially complicated.[6] Under these circumstances and pursuant to Rule 171 and *Simpson*, we conclude that this case is not exceptional, and that good cause was not shown to refer discovery matters to a master.

As to the claim that relators' delay in objecting to the appointment, in effect, waived any error, we first observe that, unlike Section 74.053 of the Texas Government Code, which limits the time in which an objection must be made to assignment of a visiting judge, Rule 171 does not specify a time period for objecting to appointment of a master. The First Court of Appeals has held, by reference to relevant federal deci-

---

5. Since the issue was not raised in *Simpson*, the opinion in that case does not indicate whether such consent must comply with Texas Rule of Civil Procedure 11 to be enforceable, or whether mere acquiescence by the parties, i.e., of the type alleged in this case, would suffice.

6. Based on the age of this case and the fact that it was set for trial on October 23, the lack of a showing that future discovery would justify the expense of supervision by a master rather than the court is not a material consideration here.

sions,[7] that a party may object to appointment of a master either before participating in any proceedings before the master, or before the parties, master and trial court have acted in reliance on the appointment.[8] *See Owens–Corning Fiberglas Corp. v. Caldwell,* 830 S.W.2d 622, 625 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).

■ In light of the Texas Supreme Court's statement in *Simpson* that *"every referral to a master,* unless authorized by statute or consented to by the parties, *must comply with Rule 171,"*[9] it is not certain that a failure to comply with Rule 171 can be waived.[10] However, to the extent that waiver is possible, we agree with the rule articulated by the First Court, and would only clarify that, in order to effect waiver, reliance must be reasonable and justified.

In applying this rule to the present case, it is clear that relators objected to the appointment before participating in any proceeding before the master. However, the real party in interest asserts that the trial judge's reliance on the appointment of the master rendered relators' objection untimely. In his affidavit in support of the real party in interest's response, Judge Carmona stated that (a) since neither party objected to appointment of a master when he announced his intention to do so on August 30 or when he specifically appointed Judge Dalehite as master on September 27, he assumed that the master's handling of the discovery disputes would enable the five-year-old case to proceed to trial, as scheduled, on October 23, and that he could thus turn his attention to other matters, and (b) when relators' objection was eventually made on October 11, he

was in the midst of a death penalty trial, and, thus, could not consider the discovery matters himself in time for the case to be tried on October 23.

■ Unlike an objection to a visiting judge, which is an absolute disqualification,[11] an objection to a special master is within the trial judge's discretion to grant or deny. *Simpson,* 806 S.W.2d at 811. In a particular case, an objection to the appointment of a master might be based on non-compliance with Rule 171, or on the particular characteristics of the individual appointed to serve, such as qualifications or conflict of interest.

In this case, it is arguable that when the trial judge announced on August 30 his intention to appoint an unnamed master, the relators were obliged to promptly assert any objection they had based on Rule 171, since that issue was unrelated to the identity of the master. It is further arguable that by September 27, when the master was named, the relators, having theretofore waived any objection based on Rule 171, were limited to objecting only to the particular master chosen. In addition, because the master was named less than 30 days before trial, and the first hearing before him would be even closer to trial, their two-week delay in objecting to him arguably also waived that objection.

However, because the law strongly disfavors the use of masters, we do not believe that masters can be imposed upon parties in such a circuitous manner. Because the appointment of a master in this case was made in two steps, on August 30 and September 27, because the trial court's August 30 pro-

---

7. *See, e.g., Burlington N.R.R. v. Washington Dep't of Revenue,* 934 F.2d 1064, 1069 (9th Cir.1991); *Cruz v. Hauck,* 515 F.2d 322, 331 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976); *First Iowa Hydro Elec. Coop. v. Iowa–Illinois Gas & Elec. Co.,* 245 F.2d 613, 627 (8th Cir.), *cert. denied,* 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); *United States v. Conservation Chem. Co.,* 106 F.R.D. 210 (W.D.Mo.1985).

8. Such reliance was present, for example, in *Conservation Chemical* where the master had taken leave of absence from a teaching position, the court had set its civil and criminal dockets, extensive timetables had been created for motion

practice before the master, and the master was to hold continuous hearings. *See* 106 F.R.D. at 229.

9. 806 S.W.2d at 810 (emphasis added).

10. Policy considerations would favor the application of waiver to prevent parties from withholding objections to gain tactical advantage, such as disruption of trial settings or scheduling orders. Similarly, no useful purpose would be served in allowing objections to appointment of masters to be made for the first time on appeal.

11. *See* Tex.Gov't Code Ann. § 74.053(c) (Vernon Supp.1995).

nouncement was not confirmed in writing and no indication was given when the master would be named, because the appointment was completed so close to the date of trial, and because the trial judge, parties and master all knew of the relators' objection to Judge Dalehite's further participation in the case based on their objection to him as a visiting judge, we do not believe that any reliance on the master's appointment in this case was reasonable or justified. We therefore conclude that relators' objection to the appointment of the master was not waived.

Because we have concluded that Rule 171 was not satisfied in this case and that the relators timely objected to the appointment of the master on that basis, we need not address the other points raised by the parties. We conditionally grant relators' petition for writ of mandamus, and direct Judge Carmona to vacate his order of September 27, 1995, appointing Judge Dalehite as master of discovery in this case. We are confident Judge Carmona will promptly do so, and a writ will issue only if he does not.