AIU INSURANCE COMPANY, Lexington Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa, Relators,

v.

The Honorable Judge James MEHAFFY, Jr., Respondent.

No. 09–97–090 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 3, 1997.

Decided April 17, 1997.

As Corrected June 3, 1997.

James D. Wise, Brown, Sims, Wise & White, Houston, Lipscomb Norvell, Benckenstein, Norvell & Nathan, Beaumont, Thomas G. Oesterreich, Lynberg & Watkins, Los Angeles, CA, for appellant.

Robert Q. Keith, Keith & Weber, Johnson City, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

This is a mandamus action involving discovery. The underlying suit is between Bristol–Myers Squib Company and Medical Engineering Corporation (Plaintiffs) and various insurance companies (Defendants) to determine whether the breast implant claims of thousands of women are covered by insurance. This dispute is only a small snapshot in the pre-trial procedure. On February 21, 1997 [1], plaintiffs filed a motion for sanctions alleging defendants, through a holding company, AIG, had engaged in a corporate policy of obstructing the discovery process, violated court orders, misrepresented whether documents were in its custody or control, lost documents that refute its coverage defenses, unjustifiably refused to produce relevant documents and ignored a special master's recommendations. Plaintiffs sought four remedies: 1) an order striking all defenses, 2) the appointment of "an outside auditor to investigate the completeness of AIG's document productions and the veracity of AIG and its counsel's representations regarding the existence of responsive documents and the efforts made to locate same," 3) all attorneys' fees, court costs and other expenses incurred by plaintiffs in connection with pursuing the discovery and 4) a monetary fine. The trial court conducted a hearing on February 26, which only involved argument of counsel. The court orally informed counsel he would order Walter Crawford:

> ... to take evidence on the question of whether or not there was a deliberate

withholding of the documents. That is, the degree of contumacy and culpability, if there was any.

And, finally, what an appropriate sanction might be, any evidence that the parties have to offer about that—what sanctions would be appropriate and efficacious under Rule 215.

Later, with Mr. Crawford in the court room, the judge stated:

> On the sanctions, the plaintiffs claim that various materials were not submitted.
>
> ... [t]he materials were first a draft report to American International Adjustment Company of January 1991; secondly, a claims handling manual; third a policy draft form and perhaps the policy—a copy of the policy in question.
>
> ... The records retention policy are the four subject matters of the Motion for Sanctions.
>
> I thought that the first inquiry should be a factual one into whether or not the materials in question were properly responsive to the discovery request.
>
> I'm not sure as I sit here now, without looking at it in much greater detail, that the materials factually fit the discovery request and whether or not they either arguably or undeniably should have been produced.
>
> There is no issue of privilege as I understand it; so, the next question is: If there was a failure to comply with the discovery obligation, was it contumacious, was it sanctionable; and finally, if so, then what—what is an appropriate sanction under Rule 215, taking into account things like the character of the conduct involved, without controversy, the degree of contumacy or culpability and so forth.
>
> I thought there should be a full evidentiary hearing on these matters.

On March 5, defendants filed their opposition to the Motion for Sanctions. The next day, Special Master Crawford conducted a hearing. On March 19, the trial judge re-

---

1. While the dates are not crucial to this proceeding, they are given to illustrate the time frame. All events occurred in 1997.

sumed the hearing on the motion. The judge invited argument "in light of the testimony adduced at the hearing over which Mr. Crawford presided but, again, emphatically, without any input from him as to that testimony, but simply taken under him as the referee or the officer who presided to maintain order and decorum." The judge, at one point, stated:

At this point, the Court simply finds that there has been a discovery abuse with reference to the nonproduction of the SOMA report.[2] The Court levies, as a temporary and partial sanction, the full funding of the audit which I will order conducted into this matter to get to the bottom of it and to find out exactly what pattern of abuse may or may not exist.

Defendants' counsel expressed concern over the parameters of the audit. The judge requested their views on possible auditors and parameters of the audit within 24 hours. Consistent with that request, defendants filed a proposed order regarding the appointment of an auditor. The defendants also filed objections to the plaintiffs' proposed order.

On March 21, the trial court signed an Amended Appointment of Discovery Auditor.[3] That order states, in pertinent part:

The auditor shall attempt to determine and report to the Court as to: why the AIG Companies did not make discovery as outlined in plaintiffs' Motion for Sanctions and to Compel and Production of Documents dated February 21, 1997; what procedures were in place for assuring compliance with the Court's discovery process; and, what steps were and were not reasonably taken by AIG employees to assure that discovery was made pursuant to the Court's process. Such inquiry would include, but not be limited to, what written procedures are normally followed; what normal procedures were and were not followed by AIG Companies in this instance; why such written and otherwise normal

procedures were not followed, if indeed they were not; and, what individuals were directly and indirectly responsible for making the discovery responses.

AIG shall produce Jeff Johnson, Ron Ryan, Megan Brill and such other agents, servants, employees and former employees under its control of the several AIG companies as and when the auditor deems necessary. Such persons are hereby directed to answer fully, under oath, any questions submitted by the auditor and to present such documents to him as he requests. Any documents which are claimed to be confidential and not subject to disclosure to the auditor, shall be photocopied, sealed and handed to the auditor for delivery to the Court *in camera.*

Bristol–Myers Squibb and AIG shall be entitled to have a lawyer present during the inquiry and investigation. Neither shall impede or interfere with the auditor's inquiry.

The auditor shall submit his report to the Court with copies to Bristol–Myers Squibb and AIG parties on or before 5:00 P.M. Thursday, March 27, 1997. Each party shall file written exceptions to the auditor's report in accordance with the Texas Rules of Civil Procedure on or before 5:00 P.M. Monday, March 31, 1997.

All costs and fees of the auditor shall be submitted to the Court for approval and shall thereafter be paid by the AIG Companies forthwith, as a partial discovery sanction for failure to produce the Soma report. . . .

On March 24, defendants filed this mandamus action, along with a request for temporary relief. We granted Motion for Leave and entered an order temporarily staying the March 21 order.

Defendants allege several deficiencies, but, in general, argue the order is neither authorized by nor complies with either TEX.R. CIV.

---

**2.** This was a report from the Sandler Occupational Medicine Association, Inc. which was produced by defendants in early February. Defendants disputed whether any previous discovery requests covered this report, but claim, in any

event, it was produced as soon as defendants became aware of its existence.

**3.** This order reflects an earlier order and rescinds that order.

P. 171 [4], 215 [5], and exceeds the trial court's powers under those rules.

■ Unfortunately, the order does not state what authority the court relied upon in appointing the auditor. Where a trial court does not specify which provision of a discovery sanction rule it relied upon in imposing sanctions, the Court of Appeals will review those portions of the rules applicable to the circumstances. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). Although the word "auditor" is used,

4. Rule 171. Master in Chancery:

The court may, in exceptional cases, for good cause appoint a master in chancery, ... who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity.

The order of reference to the master may specify or limit his powers, and may direct him to report only upon particular issues, or to do or perform particular acts, or to receive and report evidence only and may fix the time and place for beginning and closing the hearings, and for the filing of the master's report. Subject to the limitations and specifications stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of books, papers, vouchers, documents and other writings applicable thereto. He may rule upon the admissibility of evidence, unless otherwise directed by the order of reference and has the authority to put witnesses on oath, and may, himself, examine them, and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner as provided for a court sitting in the trial of a case.

. . . .

The parties may procure the attendance of witnesses before the master by the issuance and service of process as provided by law and these rules.

The court may confirm, modify, correct, reject, reverse or recommit the report, after it is filed, as the court may deem proper and necessary in the particular circumstances of the case. The court shall award reasonable compensation to such master to be taxed as costs of suit.

5. Rule 215. Abuse of Discovery; Sanctions:

. . . .

2. Failure to Comply with Order or with Discovery Request.

. . . .

b. *Sanctions by Court in Which Action is Pending*. If a party or an officer, director, or managing agent of a party or a person designated ... to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

(1) An order disallowing any further discovery of any kind or of a particular kind by the disobedient party;

(2) An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him;

(3) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(4) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(5) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

(6) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

. . . .

(8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.

. . . .

3. Abuse of Discovery Process in Seeking, Making, or Resisting Discovery. If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.

it does not appear Tex.R. Civ. P. 172 [6] was the basis since this was not "an investigation of accounts or examination of vouchers." Based upon the court's oral pronouncement: "The Court levies, as a temporary and partial *sanction,* [emphasis added] the full funding of the audit which I will order conducted into this matter to get to the bottom of it and to find out exactly what pattern of abuse may or may not exist," it appears the "auditor" was appointed under Rule 215. We have found no case law interpreting Rule 215 to allow the appointment of a "discovery auditor. Consequently, we plow new ground. Rule 215(2)(b) deals with the failure to comply with an order or a discovery request and the sanctions by the court, while Rule 215(3) deals with abuse of the discovery process in seeking, making, or resisting discovery. Once again, based upon the court's oral pronouncement and the March 21 order, it appears the court was more interested in inquiring into and investigating the discovery process and any "pattern of abuse" rather than simply inquiring into the failure to produce the SOMA report, therefore Rule 215(3) would be applicable. This rule, unlike 215(2)(b), which allows the court to "make such orders in regard to the failure as are just, and among others the following ...", restricts the court to imposing "any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b" of Rule 215. In others words, when imposing sanctions under Rule 215(2)(b), subsections (1) through (8) are illustrative, not exclusive. However when imposing sanctions under Rule 215(3), the "make such orders ... and *among others* [emphasis added] the following ..." language is not present, therefore, the court is *restricted* to those sanctions "authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b." The appointment of a "discovery auditor" is not one of those enumerated sanctions. Consequently, the order exceeds the court's power under Rule 215.

■ Because the order contains the following: "Each party shall file written excep-

tions to the auditor's report in accordance with the Texas Rules of Civil Procedure ...", it might appear the order was made under Rule 171. If so, there is an abundance of case law on the appointment of masters. In *Simpson v. Canales,* 806 S.W.2d 802, 805 (Tex.1991) (quoting 3 ROY W. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 10.17.1, at 28 (rev. 1983)), Justice Hecht noted, "The courts of Texas have not had occasion to develop an extensive body of law with respect to masters." Justice Hecht went on to discuss the history of masters from medieval England through colonial America and ending with the adoption of FED.R.CIV.P. 53. In discussing the status of masters in Texas, Hecht stated, *Simpson* 806 S.W.2d at 810:

Rule 171 shares not only much of the language of federal rule 53 but its purpose as well: it permits masters to be used but only in limited circumstances so as to avoid the abuses that centuries of experience have proven accompany a broader, systematic use. Rule 172 requires appointment of an auditor only when "an investigation of accounts or examination of vouchers appears necessary for the purpose of justice between the parties."

Rule 171 both confers and circumscribes power to appoint masters. Although the federal courts have not resolved whether they retain inherent power to appoint masters apart from Rule 53, we hold that Rule 171 is the exclusive authority for appointment of masters in our state courts. Were it otherwise, the important purposes for the restrictions imposed by the rule on the power to appoint masters would be thwarted. Centuries of experience counsel against the use of masters except in limited circumstances. We therefore conclude that every referral to a master, unless authorized by statute or consented to by the parties, must comply with Rule 171.

The court went on to reaffirm the rule that under Rule 171, masters cannot be appointed

6. Rule 172. Audit:
   When an investigation of accounts or examination of vouchers appears necessary for the purpose of justice between the parties to any suit,

the court shall appoint an auditor or auditors to state the accounts between the parties and to make report thereof to the court as soon as possible....

except "in exceptional cases, for good cause." *Id.* at 812 (quoting TEX.R. CIV. P. 171).

An argument can be made that the role of this particular master was outside of the traditional role since the auditor was to investigate and inquire into any patterns of discovery abuse by defendants, rather than just take evidence on the matter. This placed the auditor in an adversarial position.

In *Owens–Corning Fiberglas Corp. v. Caldwell,* 830 S.W.2d 622, 625 (Tex.App.-Houston [1st Dist.] 1991, no writ) the court reviewed an order which vested "the master with the authority (1) to do all acts necessary to the efficient performance of her duties, (2) to receive and report evidence and to rule on its admissibility, (3) to fix the time and place for hearings, (4) to regulate hearing procedures before her, (5) to require the production before her of evidence upon all matters pertaining to the case, (6) to put witnesses under oath and to examine them, and (7) at the request of a party, to make a record of evidence offered or excluded in the same manner as provided for a court sitting in the trial of a case." The court characterized the order as blanket authority to allow the master to "require" a party to produce evidence irrespective of whether an opposing party has made a request and concluded: "therefore, it allows the master to become an "advocate" in a proceeding, not merely a "referee" in the proceeding." *Id.* at 626.

In *TransAmerican Natural Gas Corp. v. Mancias,* 877 S.W.2d 840, 842 (Tex.App.—Corpus Christi 1994, orig. proceeding [leave denied] ), the court reviewed an order appointing a master which, among other things, ordered that after the conclusion of his work, the master could be deposed or called as a trial witness by either party. In this vein, they stated, *Id.* at 843:

It is clearly improper for such an order to cast the master in the role of advocate rather than merely referee in the underlying proceeding. *See Owens–Corning,* 830 S.W.2d at 626 (allowing master to require production of evidence regardless of whether the opposing party has made a request). There is simply no authorization

in the law for the master to take an adversary position at the trial before the court, which would place him outside the role of a master in chancery. Thus, the master is not an appropriate witness at trial.

■ Furthermore, the directions to the auditor relieved the plaintiffs of their burden to show the defendants were in violation of any discovery orders. Direct evidence that a party has withheld documents from discovery is seldom available, and it may be necessary to rely entirely upon circumstantial evidence; however, imposition of sanctions cannot be based merely on a party's bald assertions, there must be some evidence to show abuse of discovery before sanctions can be imposed. *Global Services, Inc. v. Bianchi,* 901 S.W.2d 934, 938 (Tex.1995). When a motion for sanctions asserts that a respondent to discovery requests has failed to produce documents within its possession, custody or control, the movant has the burden to prove that assertion. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993).

■ Lastly, whatever utility might have been gained by the auditor traveling to New York City would have been lost if the defendants filed exceptions to the auditor's report as provided in the March 21 order.[7] For to the extent it is challenged by exceptions, a master's report is not binding and contested fact issues are to be tried de novo before the court if a jury has not been requested. *See Mann v. Mann,* 607 S.W.2d 243 (Tex.1980); *Young v. Young,* 854 S.W.2d 698, 701 (Tex. App.—Dallas 1993, writ denied); *Hyundai Motor America v. O'Neill,* 839 S.W.2d 474, 480 (Tex.App.—Dallas 1992, no writ); *Minnich v. Jones,* 799 S.W.2d 327, 328 (Tex. App.—Texarkana 1990, no writ); *Cameron v. Cameron,* 601 S.W.2d 814, 815 (Tex.Civ. App.—Dallas 1980, no writ).

If a party is entitled to a trial de novo, the trial court has no reason to inquire into the evidence heard by the master because the evidence concerning the issues objected to must be heard anew. *Cameron,* 601 S.W.2d at 815.

---

7. Clearly the defendants would have filed exceptions to any part of the auditor's report detrimental to them, since they were filing objections to the initial appointment of the auditor.

■ The cases construing Rule 171 provide that if a party timely and formally objects to a master's ruling, that party is entitled to a de novo hearing before a judge or jury. *Martin v. Martin,* 797 S.W.2d 347, 350 (Tex.App.—Texarkana 1990, no writ). We conclude this right is automatic and is not subject to a harmless error analysis.

Consequently, the plaintiffs would have been required to produce evidence on the facts objected to in the auditor's report in a de novo hearing before the trial judge.

■ A trial court's authority to appoint a master is derived from three basic sources: the constitution, statutes, and litigant. consent. *See Simpson,* 806 S.W.2d at 810–11 n. 12; *Abramson v. Abramson,* 788 S.W.2d 860, 862–63 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Having reviewed all the possible scenarios for the appointment of the audi-

tor, we find no provision for the appointment of an auditor to "investigate and inquire into alleged discovery violations." The trial court abused its discretion in making such an appointment.

Therefore, we conditionally grant the mandamus and order the trial judge to rescind his March 21, 1997, "Amended Appointment of Discovery Auditor" order. We are confident the trial judge will comply. The writ will issue only if he fails to do so.

WRIT CONDITIONALLY GRANTED.